ACCEPTED
03-15-00007-CV
5478951
THIRD COURT OF APPEALS
AUSTIN, TEXAS
5/29/2015 4:41:03 PM
JEFFREY D. KYLE
CLERK

## NO. 03-15-00007-CV

_____

### *IN THE THIRD COURT OF APPEALS*
### *AUSTIN, TEXAS*

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
5/29/2015 4:41:03 PM
JEFFREY D. KYLE
Clerk

_____

### JOHN DOE
*Appellant*

### V.

### BOARD OF DIRECTORS OF THE STATE BAR OF TEXAS, COMMISSION FOR LAWYER DISCIPLINE; AND LINDA ACEVEDO, IN HER OFFICIAL CAPACITY AS THE CHIEF DISCIPLINARY COUNSEL OF THE STATE BAR OF TEXAS
*Appellees*

_____

On Appeal from the 126th Judicial District Court of Travis County, Texas
Cause No. D-1-GN-14-001635

_____

### APPELLANT'S REPLY BRIEF

_____

**WEST, WEBB, ALLBRITTON & GENTRY, P.C.**
1515 Emerald Plaza
College Station, Texas 77845
Telephone ~ (979) 694-7000
Facsimile ~ (979) 694-8000

GAINES WEST
State Bar No. 21197500
gaines.west@westwebblaw.com

JENNIFER D. JASPER
State Bar No. 24027026
jennifer.jasper@westwebblaw.com

### ORAL ARGUMENT REQUESTED

# TABLE OF CONTENTS

Index of Authorities ............................................................................... iii

I. Rule 2.16 ................................................................................................1

II. Sovereign Immunity Does Not Bar Doe's Claims ...............................2

     A. Appellees cannot validly apply Rule 2.16 to Doe .......................2

     B. Doe properly asserts an *ultra vires* claim against the CDC .......5

III. Statutory Immunity Does Not Bar Doe's Claims ...............................3

IV. Doe's Claims are Justiciable ............................................................4

     A. The trial court has the authority to grant the relief Doe Seeks ...4

     B. Doe does <u>not</u> seek an advisory opinion .....................................6

Conclusion .............................................................................................7

Prayer ....................................................................................................7

Certificate of Compliance .....................................................................8

Certificate of Service ............................................................................9

# INDEX OF AUTHORITIES

**Cases**

*Bd. of Disciplinary Appeals v. McFall*,
 888 S.W.2d 471, 472 (Tex. 1994) ........................................................5, 6

*City of El Paso v. Heinrich*,
 284 S.W.3d 366, 372 (Tex. 2009) ...........................................................3

*Estate of Terrell v. Sisk*,
 111 S.W.3d 274, 282 (Tex. App.—Texarkana 2003, no pet)................................4

*In re State Bar of Tex.*,
 440 S.W.3d 621 (Tex. 2014) ...............................................................5

*Love v. State Bar of Tex.*,
 982 S.W.2d 939, 942 (Tex. App. —Houston [1st Dist.] 1998, no pet.).................5

*State Bar of Tex. v. Gomez*,
 891 S.W.2d 243, 244—45, 246 (Tex. 1994)) .....................................................4, 5

*State Bar of Tex. v. Jefferson*,
 942 S.W.2d 575, 576 (Tex. 1997) ...........................................................5

*State v. Sewell*,
 487 S.W.2d 716 (Tex. 1972) ...............................................................5

## RULES AND CODES

TEX. R. DISCIPLINARY P. 1.06L.............................................................2, 3

TEX. R. DISCIPLINARY P. 2.13. ..............................................................6

TEX. R. DISCIPLINARY P. 2.16 ....................................................... *passim*

TEX. R. DISCIPLINARY P. 15.09 .........................................................................3, 4

TEX. DISCIPLINARY R. PROF'L CONDUCT, Preamble ¶ 8. ..........................................7

TEX. GOV'T CODE ANN. § 81.072(b)(10)............................................................1, 3

TO THE HONORABLE THIRD COURT OF APPEALS:

Appellant, John Doe, files the following Reply Brief to respond to matters raised by Appellees in their Amended Brief.

## I.    RULE 2.16

The underlying question in this case is whether Rule 2.16 requires "Disciplinary Proceedings" to be kept confidential from *complainants*. It does <u>not</u>, and because it does not, there is <u>no</u> authority for the CDC to deny Doe's request for a copy of its recommendation to the SDP.

The express language of Rule 2.16 does <u>not</u> contemplate excluding complainants. In relevant part, Rule 2.16 states, "[a]ll members and staff of the Office of Chief Disciplinary Counsel, Board of Disciplinary Appeals, Committees, and Commission shall maintain as confidential all Disciplinary Proceedings and associated records . . . ." TEX. R. DISCIPLINARY P. 2.16. Rule 2.16 omits any language requiring Disciplinary Proceedings to be kept confidential from the complainant, the very person who started the proceedings in the first place.

Furthermore, the Texas Government Code expressly allows the complainant to be physically present at some "Disciplinary Proceedings," including Evidentiary Panel proceedings. TEX. GOV'T CODE ANN. § 81.072(b)(10); *see* TEX. R. DISCIPLINARY P. 1.06L (defining "Disciplinary Proceedings" to include the proceeding before an Evidentiary Panel); *see also* TEX. R. DISCIPLINARY P. 2.16.

The CDC's interpretation of Rule 2.16, as requiring "Disciplinary Proceedings" to remain confidential from the complainant, cannot stand. This is particularly evident because Disciplinary Proceedings include Evidentiary Panel proceedings, before which the complainant has an express right to <u>appear</u>. Because Rule 2.16 does <u>not</u> apply to complainants, this Court should reverse the trial court's dismissal and remand this case for rulings on the substantive issues presented in Doe's pleadings.

## II. SOVEREIGN IMMUNITY DOES NOT BAR DOE'S CLAIMS

Appellees assert that neither exception to the doctrine of sovereign immunity applies. *See* APPELLEE'S BRIEF at **20–24. First, Appellees claim that Doe did not challenge Rule 2.16's validity. *Id.* at **20–22. Then, appellees claim that the *ultra vires* exception does not apply because Doe seeks to compel a government official to affirmatively perform a discretionary act. *Id.* at **22–24.

### A. Appellees cannot validly apply Rule 2.16 to Doe

Despite Appellees' characterizations of Doe's arguments, the issue Doe raises is <u>whether</u> Rule 2.16 can be applied to him, <u>not how</u> Rule 2.16 is applied. *See* APPELLEES' BRIEF at **20–21. In his live pleading, and on appeal, Doe contends that Rule 2.16 does not apply to complainants, including himself. *See, e.g.*, *infra* I. As the complainant, Doe is a participant in the proceedings, not merely an uninvolved member of the public, so Rule 2.16 does not apply to him.

*See* TEX. GOV'T CODE ANN. § 81.072(b)(10); TEX. R. DISCIPLINARY P. 1.06L, 2.16. Because Rule 2.16 does not apply to Doe, the trial court erred in dismissing the case on this ground.

### B. Doe properly asserts an *ultra vires* claim against the CDC

Doe's claim is a proper *ultra vires* claim. He alleges that Linda Acevedo, the CDC, denied him a copy of the CDC's recommendation to the SDP, without legal authority to do so. That is the very nature of an *ultra vires* claim: a governmental official takes an action that it lacked authority to take. *See, e.g.*, *City of El Paso v. Heinrich*, 284 S.W.3d 366, 372 (Tex. 2009). Because Rule 2.16 did not authorize Linda Acevedo to take the action she did (withhold from Doe a copy of the CDC's recommendation to the SDP), she acted *ultra vires*, and the trial court erred in dismissing the case on this ground.

## III. STATUTORY IMMUNITY DOES <u>NOT</u> BAR DOE'S CLAIMS

Appellees argue that Rule 15.09 blankets them with immunity. APPELLEES' BRIEF at **24–26. However, Rule 15.09 applies only to (1) individuals who are (2) acting in the course of their official duties. TEX. R. DISCIPLINARY P. 15.09. Because Appellees are not individuals, Rule 15.09 does not apply. Further, Doe sued the CDC in her official capacity, which is not a lawsuit against her as an individual. *See, e.g.*, *Estate of Terrell v. Sisk*, 111 S.W.3d 274, 282 (Tex. App.—Texarkana 2003, no pet) (noting that an official-capacity suit against a

governmental employee is not a suit against the employee but against the governmental-unit employer). But even if it were a lawsuit against her individually, Doe alleged that she acted without legal authority, which means that she was not acting in the course of her official duties, as is required for Rule 15.09 to provide immunity in this case. TEX. R. DISCIPLINARY P. 15.09. Thus, the trial court erred in dismissing the case on this ground.

## IV. DOE'S CLAIMS ARE JUSTICIABLE

Appellees argue that Doe's claims are not justiciable because he asks the trial court to exercise authority it does not have, and because a declaratory judgment in this matter would be advisory because the SDP has already dismissed his complaint. APPELLEES' BRIEF at ** 26-31.

### A. The trial court has the authority to grant the relief Doe seeks

Citing the plurality in *Gomez*, Appellees argue that granting Doe's requested declarations in this case would cause the trial court to usurp the Texas Supreme Court's authority. APPELLEE'S BRIEF at *27 (citing *State Bar of Tex. v. Gomez*, 891 S.W.2d 243, 244—45, 246 (Tex. 1994)). Appellees further allege that lower courts lack authority to interfere in disciplinary proceedings at any point in the process. *Id.* at *28 (citations omitted). However, none of the cases Appellees cite apply here because in each case, the plaintiff asked the court to either create a new rule or obligation, or to enjoin the disciplinary proceedings. *Id.* at **27–28 (citing

*In re State Bar of Tex.*, 440 S.W.3d 621 (Tex. 2014) (orig. proceeding) (finding trial court cannot order Commission for Lawyer Discipline to turn over investigative records); *Gomez*, 891 S.W.2d at 244–45, 246 (holding trial court cannot order state bar to create a new program); *State Bar of Tex. v. Jefferson*, 942 S.W.2d 575, 576 (Tex. 1997) (orig. proceeding) (concluding trial court cannot enjoin disciplinary investigative proceedings); *Bd. of Disciplinary Appeals v. McFall*, 888 S.W.2d 471, 472 (Tex. 1994) (orig. proceeding) (per curiam) (finding that trial court cannot enjoin a disciplinary suspension); *State v. Sewell*, 487 S.W.2d 716 (Tex. 1972) (orig. proceeding) (holding trial court cannot enjoin disciplinary investigative proceedings).

In the present case, Doe is <u>not</u> asking the court to create a new rule, institute a new program, insert a new requirement, promulgate a new policy or regulation, or enjoin disciplinary proceedings. Doe is merely asking the court to declare that Rule 2.16 does not require the CDC to withhold from Doe its recommendation to the SDP. Appellees did not cite any case holding that a trial court cannot review a rule of disciplinary procedure. And in fact, a trial court is well within its authority in reviewing a rule of disciplinary procedure. *See, e.g.*, *Love v. State Bar of Tex.*, 982 S.W.2d 939, 942 (Tex. App. —Houston [1st Dist.] 1998, no pet.) (noting that disciplinary rules have the force and effect of a statute and should be construed in

accordance with rules of statutory construction).  Thus, the trial court erred in dismissing the case on this ground.

**B.      Doe does <u>not</u> seek an advisory opinion**

Appellees argue that because the SDP has already dismissed Doe's complaint, any opinion in this matter would be advisory, thus, this issue is moot. APPELLEES' BRIEF at \*\*29–31.  However, as discussed in Doe's opening brief, this case satisfies the "public interest" exception to the mootness doctrine.  *See* APPELLANT'S BRIEF at \*\*9–11.

Appellees attempt to hide behind the SDP, asserting that any future grievance Doe may file will not be "handicapped" by the CDC's refusal to provide a copy of its recommendation to the SDP.  This is so because, Appellees contend, the SDP, not the CDC, decides to dismiss complaints.  Therefore, Appellees argue, Doe will receive no benefit from reviewing the CDC's recommendation. However, it is the CDC who determines whether "just cause" exists to further investigate a complaint, and it is the CDC who recommends dismissal to the SDP. *See* TEX. R. DISCIPLINARY P. 2.13.

Reviewing the CDC's recommendation in this matter will provide Doe, the complainant, with information as to why his sixteen-page complaint failed, in the CDC's eyes, to provide "just cause."  Such information will play a critical role in aiding a member of the public, aggrieved by the behavior of an attorney, in

adequately presenting the issues to the CDC.  Therefore, an opinion in this matter will not be advisory, and the trial court erred in dismissing the case on this ground.

## CONCLUSION

"The legal profession has a responsibility to assure that its regulation is undertaken in the public interest rather than in furtherance of parochial or self-interested concerns of the bar . . . [n]eglect of these responsibilities compromises the independence of the profession and the public interest which it serves." TEX. DISCIPLINARY R. PROF'L CONDUCT, Preamble ¶ 8.  Allowing the CDC to hide its recommendation to the SDP *from the complainant* violates the principles espoused in the Preamble mentioned above.  Rule 2.16 does <u>not</u> require such secrecy.  The trial court erred in dismissing this case on the procedural grounds raised by Appellees.

## PRAYER

Appellant John Doe prays that this Court reverse the trial court's dismissal and remand this case for further proceedings.

Respectfully submitted,

**WEST, WEBB, ALLBRITTON & GENTRY, P.C.**
1515 Emerald Plaza
College Station, Texas 77845-1515
Telephone: (979) 694-7000
Facsimile: (979) 694-8000

By: /s Gaines West
    GAINES WEST
    State Bar No. 21197500
    gaines.west@westwebblaw.com
    JENNIFER D. JASPER
    State Bar No. 24027026
    jennifer.jasper@westwebblaw.com

    COUNSEL FOR APPELLANT
    JOHN DOE

## CERTIFICATE OF COMPLIANCE

I certify that this **APPELLANT'S REPLY BRIEF** complies with the typeface and word-count requirement set forth in the Rules of Appellate Procedure. This motion has been prepared, using Microsoft Word, in 14-point Times New Roman font for the text and 12-point Times New Roman font for any footnotes. This motion contains 1,549 words, as determined by the word count feature of the word processing program used to prepare this document, excluding those portions of the notice exempted by TEX. R. APP. P. 9.4(i)(1).

/s Gaines West
Gaines West

## CERTIFICATE OF SERVICE

On May 29, 2015, the undersigned certifies that he served a copy of this Brief of Appellee on the following in the manner listed below, in compliance with Texas Rules of Appellate Procedure 9.5 and 25.1(e):

PAUL HOMBURG, III
Disciplinary Counsel
Office of the Chief Disciplinary Counsel
State Bar of Texas
711 Navarro, Suite 750
San Antonio, Texas 78205

Via email: phomburg@texasbar.com
and Certified Mail, RRR

Rebecca Stevens
Disciplinary Counsel
Office of the Chief Disciplinary Counsel
State Bar of Texas
P. O. Box 12487
Austin, Texas 78711-2487

Via email: bstevens@texasbar.com
and Certified Mail, RRR

Cynthia Canfield Hamilton
Office of the Chief Disciplinary counsel
State Bar of Texas
P. O. Box 12487
Austin, Texas 78711-2487

Via email: chamilton@texasbar.com
and Certified Mail, RRR

/s Gaines West
Gaines West

[📄] Original Image of 888 S.W.2d 471 (PDF)

888 S.W.2d 471
Supreme Court of Texas.

BOARD OF DISCIPLINARY APPEALS, Relator

v.

The Honorable John R.
McFALL, Judge, Respondent.

No. 94–0960. | Dec. 1, 1994.

Board of Disciplinary Appeals sought writ of mandamus to vacate district court's injunction against suspension of attorney and writ of prohibition barring further proceedings in district court. The Supreme Court held that district court lacks jurisdiction to enjoin suspension of attorney.

Relief granted.

**Attorneys and Law Firms**

**\*472** Christine E. McKeeman and Thomas H. Watkins, Austin, for relator.

John R. McFall and Mark S. Smith, Lubbock, for respondent.

**ON PETITIONS FOR WRITS OF
MANDAMUS AND PROHIBITION**

PER CURIAM.

 [1]   The Board of Disciplinary Appeals requests a writ of mandamus to vacate the district court's injunction against the suspension of an attorney and a writ of prohibition barring further proceedings in that court. Because the district court lacked jurisdiction to enjoin these disciplinary proceedings, we grant the requested relief.

In 1992, the State Bar initiated a disability disciplinary action against Mark S. Smith in accordance with TEX.R.DISCIPLINARY P. 12.01 (1992). At a hearing before the District Disability Committee, Smith stipulated to his disability and the Committee recommended a probated suspension. The Board of Disciplinary Appeals accepted the recommendation and issued a Judgment Probating Disability Suspension, setting out the terms and conditions of Smith's probation. One of the terms of Smith's probation was

compliance with a supervision agreement, which required Smith to "remain abstinent from all alcohol and other mind altering drugs."

In March of 1994, a member of the Board of Disciplinary Appeals observed Smith drinking alcohol in a hotel bar. The State Bar subsequently filed a motion to revoke Smith's probation. At an evidentiary hearing, Smith admitted to having used alcohol while on probation. The Board of Disciplinary Appeals revoked the probation and suspended Smith from the practice of law. Smith filed a Notice of Appeal with this Court but did not request a stay of his suspension. The decision of the Board of Disciplinary Appeals was affirmed on October 6, 1994.

The day after filing his appeal, Smith petitioned for a Temporary Restraining Order from the 237th District Court in Lubbock. Judge McFall granted the Temporary Restraining Order and scheduled a hearing on a temporary injunction. After the hearing, Judge McFall took the matter under advisement and extended the restraining order pending further hearings. The Board of Disciplinary Appeals then petitioned for a writ of mandamus and a writ of prohibition.

 [2]   A writ of mandamus and writ of prohibition are appropriate when a district court issues an order beyond its jurisdiction. *Crouch v. Craik,* 369 S.W.2d 311, 314 (Tex.1963). The district court lacked jurisdiction under the Rules of Disciplinary Procedure to enjoin Smith's suspension. Section 81.071 of the Texas Government Code provides that each attorney practicing in Texas is "subject to the disciplinary and disability jurisdiction of the supreme court and the Commission for Lawyer Discipline, a committee of the state bar." Pursuant to this authority, this court has established a comprehensive system of lawyer discipline governed by the Rules of Disciplinary Procedure.

The rules provide for appeals directly to this Court. TEX.R.DISCIPLINARY P. 7.11. If the appeal is unsuccessful, Smith may seek reinstatement in district court, with a jury trial if he desires one. TEX.R.DISCIPLINARY P. 12.06. The rules do not, however, provide for interim equitable relief, and the district court did not have the power to enjoin Smith's suspension.

In *State v. Sewell,* 487 S.W.2d 716 (Tex.1972), we granted mandamus to vacate an injunction barring Grievance Committee proceedings, holding that an injunction by a district court "is an interference with the grievance procedures

authorized by ... the State Bar Act and constitutes a clear abuse of discretion." *Id.* at 719. We did not even reach the question of whether an adequate remedy at law existed because the case was one "affecting the state as a whole and in which the orderly processes of government have been disturbed." *Id.* (quoting **\*473** *State v. Ferguson,* 133 Tex. 60, 125 S.W.2d 272, 274 (1939)). Pursuant to Rule 122 of the Texas Rules of Appellate Procedure, without hearing oral argument, a majority of the court grants the writ of mandamus and the writ of prohibition.

**Parallel Citations**

38 Tex. Sup. Ct. J. 110

---

**End of Document**

© 2015 Thomson Reuters. No claim to original U.S. Government Works.

[PDF] Original Image of 284 S.W.3d 366 (PDF)

284 S.W.3d 366
Supreme Court of Texas.

The CITY OF EL PASO, et al., Petitioners,

v.

Lilli M. HEINRICH, Respondent.

No. 06–0778.   |   Argued Nov.
13, 2007.   |   Decided May 1, 2009.

**Synopsis**

**Background:** Police officer's widow brought action against
city, public employee's pension fund, board of trustees of
pension fund, and named individuals, alleging that board
breached its fiduciary duty by reducing her pension benefits
by one-third, and seeking total pension benefits allegedly
owed to her plus cost of living allowances. The 346th District
Court, El Paso County, 2005 WL 4926502, Angie Barill,
J., denied defendants' plea to the jurisdiction. Defendants
appealed. The Court of Appeals, 8th District, El Paso, 198
S.W.3d 400, Richard Barajas, C.J., affirmed, and defendants
appealed.

**Holdings:** The Supreme Court, Jefferson, C.J., held that:

[1] widow's declaratory judgment and injunction action
regarding pension was not barred by sovereign immunity;

[2] widow's lawsuit regarding reduction of pension did
not implicate constitutional prohibition of bill of attainder,
ex post facto law, retroactive law, or any law impairing
obligation of contracts; and

[3] fact questions precluded grant of plea to the jurisdiction.

Affirmed in part, reversed in part, and remanded.

**Attorneys and Law Firms**

**\*368** Jennifer F. Callan, Laura P. Gordon, Asst. City Attys.,
Michele Little Locke, John Lomax Anderson, El Paso, Eric
G. Calhoun, Richard J. Pradarits Jr., Travis & Calhoun, P.C.,
Dallas, Robert D. Klausner, Stuart A. Kaufman, Klausner &
Kaufman, P.A., Plantation, FL, for Petitioners.

Stewart W. Forbes, Forbes & Forbes, El Paso, for
Respondent.

Philip Durst, Deats Durst Owen & Levy, P.L.L.C., Austin, for
Amicus Curiae Texas State Association of Fire Fighters.

Kristofer S. Monson, Asst. Solicitor Gen., Austin, for Amicus
Curiae State of Texas.

**Opinion**

Chief Justice JEFFERSON delivered the opinion of the Court.

[1]  [2]  [3]  "Sovereign immunity protects the State from
lawsuits for money damages." *Tex. Nat. Res. Conservation
Comm'n v. IT–Davy,* 74 S.W.3d 849, 853 (Tex.2002). But
"an action to determine or protect a private party's rights
against a state official who has acted without legal or
statutory authority is not a suit against the State that sovereign
immunity bars." *Fed. Sign v. Tex. S. Univ.,* 951 S.W.2d 401,
405 (Tex.1997). Today we examine the intersection of these
two rules. We conclude that while governmental immunity
**\*369**  generally bars suits for retrospective monetary relief, it
does not preclude prospective injunctive remedies in official-
capacity suits against government actors who violate statutory
or constitutional provisions. We affirm in part and reverse in
part the court of appeals' judgment and remand this case to
the trial court for further proceedings.

**I**

**Background**

Lilli M. Heinrich is the widow of Charles D. Heinrich, a
member of the El Paso Police Department who died in August
1985 from wounds received in the line of duty. Shortly after
Charles died, the El Paso Firemen & Policemen's Pension
Fund began paying Heinrich monthly survivor benefits equal
to 100% of the monthly pension her husband had earned. [1]
The parties contest how those payments were apportioned.
The City of El Paso, the El Paso Firemen & Policemen's
Pension Fund ("the Fund"), the Fund's Board of Trustees
("the Board"), and the individual board members contend that
the Fund's bylaws assigned only two-thirds of this payment
to Heinrich, the other third being paid to her on behalf of
her then-minor child. Heinrich, on the other hand, contends
that, notwithstanding the bylaws, the Board voted to award

WestlawNext © 2015 Thomson Reuters. No claim to original U.S. Government Works.

her 100% of Charles' pension benefits in her own right, as more fully explained below.

Accordingly, when in 2002 the Board reduced the monthly payments to Heinrich by one-third after Heinrich's son turned 23, Heinrich filed this lawsuit, alleging that petitioners violated the statute governing the Fund by reducing her benefits retroactively. Heinrich sought both declaratory relief and an injunction restoring Heinrich to the "status quo from [the] date of the illegal act." Petitioners filed pleas to the jurisdiction asserting that governmental immunity shielded the governmental entities from suit and that the individual board members enjoyed official immunity. The trial court denied the pleas, and petitioners filed an interlocutory appeal.

The court of appeals affirmed, holding that "a party may bring a suit seeking declaratory relief against state officials who allegedly act without legal or statutory authority and such suit is not a 'suit against the state.' " 198 S.W.3d 400, 406. The court acknowledged that, if successful, Heinrich would be entitled to past and future benefits, but held that Heinrich's suit made a valid claim for her vested right to pension benefits rather than money damages. *Id.* at 407. We granted the petition for review in order to clarify the types of relief that may be sought without legislative consent. [2] 50 Tex. Sup.Ct. J. 910 (June 22, 2007).

## II

## Discussion

## A

### *Ultra Vires* Claims

Petitioners contend that although Heinrich requests declaratory and equitable relief, her claim is essentially for past and future money damages, and that governmental immunity therefore bars her suit. As we said in *Reata Construction Corp. v. City of Dallas,* " '[s]overeign immunity protects the State from lawsuits for money damages.' Political subdivisions of the state ... are entitled to such immunity — **\*370** referred to as governmental immunity—unless it has been waived." *Reata,* 197 S.W.3d 371, 374 (Tex.2006) (citations omitted); *see also Wichita Falls State Hosp. v. Taylor,* 106 S.W.3d 692, 694 n. 3 (Tex.2003). We have said

repeatedly that the Legislature is in the best position to waive or abrogate immunity, "because this allows the Legislature to protect its policymaking function." *IT–Davy,* 74 S.W.3d at 854 (citations omitted) (collecting cases).

Heinrich concedes that the City, Fund, and Board enjoy governmental immunity from suit, but argues that because her claim alleges a reduction in her benefits that was unauthorized by law, it is not barred. This is so, she says, because "[p]rivate parties may seek declaratory relief against state officials who allegedly act without legal or statutory authority." *Id.* at 855 (citing *Tex. Educ. Agency v. Leeper,* 893 S.W.2d 432 (Tex.1994) (suit challenging state officials' construction of compulsory school-attendance law)); *see also Fed. Sign.,* 951 S.W.2d at 404 ("A private litigant does not need legislative permission to sue the State for a state official's violations of state law.") (citations omitted). We explained the rationale behind this exception to governmental immunity in *Federal Sign*:

> A state official's illegal or unauthorized actions are not acts of the State. Accordingly, an action to determine or protect a private party's rights against a state official who has acted without legal or statutory authority is not a suit against the State that sovereign immunity bars. In other words, we distinguish suits to determine a party's rights against the State from suits seeking damages. A party can maintain a suit to determine its rights without legislative permission.

*Fed. Sign,* 951 S.W.2d at 404 (citations omitted).

[4] [5] On this basis, Heinrich argues that rather than money damages, she seeks only equitable and injunctive relief under the Uniform Declaratory Judgment Act. That Act is a remedial statute designed "to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations." TEX. CIV. PRAC. & REM.CODE § 37.002(b). It provides: "A person ... whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise may have determined any question of construction or validity arising under the ... statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder." *Id.* § 37.004(a). The Act, however, does not

enlarge a trial court's jurisdiction, and a litigant's request for declarative relief does not alter a suit's underlying nature. [3] **\*371** *IT–Davy,* 74 S.W.3d at 855; *State v. Morales,* 869 S.W.2d 941, 947 (Tex.1994). It is well settled that "private parties cannot circumvent the State's sovereign immunity from suit by characterizing a suit for money damages ... as a declaratory-judgment claim." *IT–Davy,* 74 S.W.3d at 856 (citing *W.D. Haden Co. v. Dodgen,* 158 Tex. 74, 308 S.W.2d 838, 842 (1958)).

 **[6]** Heinrich relies on *State v. Epperson,* 121 Tex. 80, 42 S.W.2d 228, 231 (1931), in which we held that a suit against a tax collector for the recovery of money (alleged to be due under a contract and withheld unlawfully) was not barred by immunity. There, we noted that the tax collector had no discretion under the governing law to deny payment on Epperson's contract:

> By legislative act the state has constituted the tax collector of the county its agent to receive delinquent taxes collected under such contract, and it is the duty of such officer to pay all fees and commissions lawfully incurred in the collection thereof to the various parties who may be entitled thereto. Under such circumstances, the tax collector's duty with reference to money belonging to persons who are entitled under valid contracts to receive the same from him is purely ministerial. If he withholds the payment of such funds when a person is lawfully entitled to receive same, he has failed to discharge a duty imposed upon him by law and his act is a wrongful one.

*Epperson,* 42 S.W.2d at 231. We therefore concluded that although the trial court would "not possess jurisdiction to enforce the specific performance of the contract relied upon by Epperson or to award damages for any breach of said contract," Epperson's suit was "simply an action to compel an officer, as agent of the state, to pay over funds to a party who claims to be lawfully entitled thereto." *Id.*

Thus, the rule arising out of *Epperson* is that while suits for contract damages against the state are generally barred by immunity, where a statute or the constitution requires that government contracts be made or performed in a certain way,

leaving no room for discretion, a suit alleging a government official's violation of that law is not barred, even though it necessarily involves a contract. We explained this distinction in *W.D. Haden Co. v. Dodgen*:

> [A]lthough [*Epperson* ] ar[ose] out of [ ] contract transaction ... [it] appears to fall into the class of cases projected by *United States v. Lee,* [106 U.S. 196, 1 S.Ct. 240, 27 L.Ed. 171 (1882) ].[4] In that class of cases it is held that suits for property alleged to be unlawfully or wrongfully withheld from the rightful owner by officers of the state are not suits against the sovereign itself and may be maintained without permission of the sovereign.

158 Tex. 74, 308 S.W.2d 838, 841 (1958). In other words, where statutory or constitutional provisions create an entitlement to payment, suits seeking to require state officers to comply with the law are not barred by immunity merely because they compel the state to make those payments. This rule is generally consistent with the letter and spirit of our later caselaw. In *IT–Davy,* we distinguished permissible declaratory-judgment suits against state officials **\*372** "allegedly act[ing] without legal or statutory authority" from those barred by immunity: "In contrast [to suits not implicating sovereign immunity], declaratory-judgment suits against state officials seeking to establish a contract's validity, to enforce performance under a contract, or to impose contractual liabilities are suits against the State. *That is because such suits attempt to control state action by imposing liability on the State.*" 74 S.W.3d at 855–56 (citations omitted) (emphasis added).

 **[7]** From this rationale, it is clear that suits to require state officials to comply with statutory or constitutional provisions are not prohibited by sovereign immunity, even if a declaration to that effect compels the payment of money. To fall within this *ultra vires* exception, a suit must not complain of a government officer's exercise of discretion, but rather must allege, and ultimately prove, that the officer acted without legal authority or failed to perform a purely ministerial act. *Compare Epperson,* 42 S.W.2d at 231 ("the tax collector's duty ... is purely ministerial") *with Catalina Dev., Inc. v. County of El Paso,* 121 S.W.3d 704, 706 (Tex.2003) (newly elected commissioners court immune from suit where it "acted within its discretion to protect

the perceived interests of the public" in rejecting contract approved by predecessor), *and Dodgen,* 308 S.W.2d at 842 (suit seeking "enforcement of contract rights" barred by immunity in the absence of any "statutory provision governing or limiting the manner of sale"). Thus, *ultra vires* suits do not attempt to exert control over the state—they attempt to reassert the control of the state.[5] Stated another way, these suits do not seek to alter government policy but rather to enforce existing policy.

Further, while "[a] lack of immunity may hamper governmental functions by requiring tax resources to be used for defending lawsuits ... rather than using those resources for their intended purposes," *Reata Constr. Corp.,* 197 S.W.3d at 375, this reasoning has not been extended to *ultra vires* suits, *see Fed. Sign,* 951 S.W.2d at 404 (citing *Dir. of the Dep't of Agric. & Env't v. Printing Indus. Ass'n of Tex.,* 600 S.W.2d 264, 265–66 (Tex.1980) (legislative consent not required for suit for injunctive relief against state agency to halt unauthorized printing equipment and printing activities), *Tex. Highway Comm'n v. Tex. Ass'n of Steel Imps., Inc.,* 372 S.W.2d 525, 530 (Tex.1963) (legislative consent not required for declaratory judgment suit against Highway Commission to determine the parties' rights), and *Cobb v. Harrington,* 144 Tex. 360, 190 S.W.2d 709, 712 (1945) (legislative consent not required for declaratory judgment suit against State Comptroller to determine parties' rights under tax statute)). Further, extending immunity to officials using state resources in violation of the law would not be an efficient way of ensuring those resources are spent as intended. This is particularly true since, as discussed below, suits that lack merit may be speedily disposed of by a plea to the jurisdiction. *See Tex. Dep't of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 226 (Tex.2004).

## B

### Proper Parties

 **[8]** **[9]** **[10]** Nonetheless, as a technical matter, the governmental entities themselves—as opposed to their officers in **\*373** their official capacity—remain immune from suit. We have been less than clear regarding the permissible use of a declaratory remedy in this type of *ultra vires* suit.[6] Must it be brought directly against the state or its subdivisions? Or must it be brought against the relevant government actors in their official capacity? *Compare Fed.*

*Sign,* 951 S.W.2d at 404 ("A private litigant does not need legislative permission to sue the State for a state official's violations of state law.") (citations omitted), *with IT–Davy,* 74 S.W.3d at 855 ("Private parties may seek declaratory relief against state officials who allegedly act without legal or statutory authority.") (citations omitted). It seems to us, however, that because the rule that *ultra vires* suits are not "suit[s] against the State within the rule of immunity of the State from suit" derives from the premise that the "acts of officials which are not lawfully authorized are not acts of the State," *Cobb,* 190 S.W.2d at 712, it follows that these suits cannot be brought against the state, which retains immunity, but must be brought against the state actors in their official capacity.[7] This is true even though the suit is, for all practical purposes, against the state. *See Brandon v. Holt,* 469 U.S. 464, 471–72, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985) ("[A] judgment against a public servant 'in his official capacity' imposes liability on the entity that he represents provided, of course, the public entity received notice and an opportunity to respond."); *Tex. A & M Univ. Sys. v. Koseoglu,* 233 S.W.3d 835, 844 (Tex.2007) ("It is fundamental that a suit against a state official is merely 'another way of pleading an action against the entity of which [the official] is an agent.' ") (quoting *Kentucky v. Graham,* 473 U.S. 159, 165, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985)).

## C

### Permissible Relief

 **[11]** But the *ultra vires* rule is subject to important qualifications. Even if such a claim may be brought, the remedy may implicate immunity. *Cf.* 13 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 3524.3 (under federal **\*374** immunity law, an *ultra vires* suit may be brought but "if the defendant is a state officer, sovereign immunity bars the recovery of damages from the state treasury in a private suit"). This is a curious situation: the basis for the *ultra vires* rule is that a government official is not following the law, so that immunity is not implicated, but because the suit is, for all practical purposes, against the state, its remedies must be limited. *Cf. Fla. Dep't of State v. Treasure Salvors, Inc.,* 458 U.S. 670, 685, 102 S.Ct. 3304, 73 L.Ed.2d 1057 (1982) ("There is a well-recognized irony in *Ex parte Young*; unconstitutional conduct by a state officer may be 'state action' for purposes of the Fourteenth Amendment yet not attributable to the

State for purposes of the Eleventh."). We recently held that retired firefighters could not pursue a declaratory judgment action against the City to recover amounts allegedly previously withheld from lump-sum termination payments in violation of the Local Government Code. *City of Houston v. Williams,* 216 S.W.3d 827, 828 (Tex.2007). Without discussing *Epperson,* we applied the rule from *IT–Davy* and *Dodgen* that the declaratory judgment act cannot be used to circumvent immunity, noting that "[t]he only injury the retired firefighters allege has already occurred, leaving them with only one plausible remedy—an award of money damages." *Id.* at 829. *Williams* stands for the proposition, then, that retrospective monetary claims are generally barred by immunity.

We also stated that "in every suit against a governmental entity for money damages, a court must first determine the parties' contract or statutory rights; if the sole purpose of such a declaration is to obtain a money judgment, immunity is not waived." *Id.* This does not mean, however, that a judgment that involves the payment of money necessarily implicates immunity. Drawing the line at monetary relief is itself problematic, as "[i]t does not take much lawyerly inventiveness to convert a claim for payment of a past due sum (damages) into a prayer for an injunction against refusing to pay the sum, or for a declaration that the sum must be paid, or for an order reversing the agency's decision not to pay." *Bowen v. Massachusetts,* 487 U.S. 879, 915–16, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988) (Scalia, J., dissenting) (discussing section 702 of the Administrative Procedure Act, which waives sovereign immunity in actions against federal agencies as long as the plaintiff seeks "relief other than money damages") (quoting 5 U.S.C. 702 (2000)).

Parsing categories of permissible relief in cases implicating immunity inevitably involves compromise. *See, e.g.*, DOUGLAS LAYCOCK, MODERN AMERICAN REMEDIES 482 (3d ed. 2002) ("The law of remedies against governments and government officials is a vast and complex body of doctrine, full of technical distinctions, fictional explanations, and contested compromises."). The United States Supreme Court has held that, under federal immunity law, claims for prospective injunctive relief are permissible, while claims for retroactive relief are not, as such an award is "in practical effect indistinguishable in many aspects from an award of damages against the State." *Edelman v. Jordan,* 415 U.S. 651, 668, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). This rule originated in *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), in which the Court held that an

action to restrain a government official from unconstitutional conduct was not barred by immunity. Later, in *Edelman,* the Court recognized that the distinction between prospective and retrospective relief "will not in many instances be that between day and night" and cautioned that a fiscal impact on the **\*375** State did not necessarily implicate immunity:

> The injunction issued in *Ex parte Young* was not totally without effect on the State's revenues, since the state law which the Attorney General was enjoined from enforcing provided substantial monetary penalties against railroads which did not conform to its provisions. Later cases from this Court have authorized equitable relief which has probably had greater impact on state treasuries than did that awarded in *Ex parte Young*. In *Graham v. Richardson,* 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971), Arizona and Pennsylvania welfare officials were prohibited from denying welfare benefits to otherwise qualified recipients who were aliens. In *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), New York City welfare officials were enjoined from following New York State procedures which authorized the termination of benefits paid to welfare recipients without prior hearing. But the fiscal consequences to state treasuries in these cases were the necessary result of compliance with decrees which by their terms were prospective in nature. State officials, in order to shape their official conduct to the mandate of the Court's decrees, would more likely have to spend money from the state treasury than if they had been left free to pursue their previous course of conduct. Such an ancillary effect on the state treasury is a permissible and often an inevitable consequence of the principle announced in *Ex parte Young, supra.*

*Id.* at 667–68, 94 S.Ct. 1347 (footnote omitted). The retroactive portion of the *Edelman* district court's decree was different, however, as "[i]t require[d] payment of state funds, not as a necessary consequence of compliance in the future with a substantive federal-question determination, but as a form of compensation to those whose applications were processed on the slower time schedule at a time when petitioner was under no court-imposed obligation to conform to a different standard." *Id.* at 668, 94 S.Ct. 1347.

While "[t]he line between prospective and retrospective remedies is neither self-evident nor self-executing," LAYCOCK, MODERN AMERICAN REMEDIES at 483, the Supreme Court shed further light on the issue in *Milliken v. Bradley,* 433 U.S. 267, 269, 97 S.Ct. 2749, 53 L.Ed.2d 745 (1977), a case involving desegregation of the Detroit school system. The Supreme Court upheld a trial court's order requiring state officials to spend $6 million on education to remedy effects of segregation. *Milliken,* 433 U.S. at 290, 97 S.Ct. 2749. The Court held that this relief was permissible under *Edelman:* "That the programs are also 'compensatory' in nature does not change the fact that they are part of a plan that operates *prospectively* to bring about the delayed benefits of a unitary school system." *Id.*; *see also* 13 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 3524.3 (noting that, under *Edelman,* "[i]njunctions requiring expenditure of state funds are acceptable, so long as the order is prospective" but "[r]etroactive relief, including compensatory damages from state funds are barred").

This compromise between prospective and retroactive relief, while imperfect, best balances the government's immunity with the public's right to redress in cases involving *ultra vires* actions, and this distinction "appear[s] in the immunity of the United States, and in the law of most states' immunity from state-law claims." LAYCOCK, MODERN AMERICAN REMEDIES at 482. It also comports with the modern justification for immunity: protecting the public fisc. **\*376** *Tooke v. City of Mexia,* 197 S.W.3d 325, 331–32 (Tex.2006) (observing that immunity "shield[s] the public from the costs and consequences of improvident actions of their governments"); *Federal Sign,* 951 S.W.2d at 417 (Enoch, J., dissenting) (noting that suits against the state would deplete treasury resources and tax funds necessary to operate the government). Moreover, it is generally consistent with the way our courts of appeals have interpreted *Williams*. *See, e.g.*, *City of Round Rock v. Whiteaker,* 241 S.W.3d 609, 633–34 (Tex.App.-Austin 2007, pet. denied) (approving, under

*Williams,* dichotomy between declaratory and injunctive claims regarding past statutory violations and those seeking only to compel the city to follow the law in the future; the government was immune from the former but not the latter); *Bell v. City of Grand Prairie,* 221 S.W.3d 317, 325 (Tex.App.-Dallas 2007, no pet.) (holding that, under *Williams,* firefighters' requested declaration regarding past statutory violation was barred, but to the extent the requested declaration concerned future violations, the claim was not barred, providing the firefighters did not seek an award of money damages). And finally, it ensures that statutes specifically directing payment, like any other statute, can be judicially enforced going forward.

[12] This approach is inconsistent with *Epperson,* however, in which we held that, if successful, Epperson would be entitled to "the sum of $93,000 which belonged to him as his commission for services rendered." *Epperson,* 42 S.W.2d at 229. In that respect, *Epperson* conflicts with *Williams,* in which we implied that prospective remedies might not be barred even though retrospective monetary ones were. *Williams,* 216 S.W.3d at 829 (noting that "[t]he only injury the retired firefighters allege has already occurred, leaving them with only one plausible remedy—an award of money damages" and that "they assert no right to payments from the City in the future"). The best way to resolve this conflict is to follow the rule, outlined above, that a claimant who successfully proves an *ultra vires* claim is entitled to prospective injunctive relief, as measured from the date of injunction. *Cf. Edelman,* 415 U.S. at 669, 94 S.Ct. 1347 (using entry of injunction to distinguish retrospective from prospective relief). Thus, while the *ultra vires* rule remains the law, *see Federal Sign,* 951 S.W.2d at 404, *Epperson's* retrospective remedy does not.

[13] But this rule is not absolute. For example, a claimant who successfully proves a takings claim would be entitled to compensation, and the claim would not be barred by immunity even though the judgment would require the government to pay money for property previously taken. *Gen. Servs. Comm'n v. Little–Tex Insulation Co.,* 39 S.W.3d 591, 598 (Tex.2001) (noting that governmental immunity "does not shield the State from an action for compensation under the takings clause"); *cf.* WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 3524.3 ("If the state cannot invoke its immunity, retroactive relief against it is allowed.").

[14] Heinrich has not alleged a takings claim. In the trial court, Heinrich alleged only that "a suit for equitable relief

against a governmental entity for violation of a provision of the Texas Bill of Rights is excepted from ... sovereign immunity under Texas Constitution article [I], section 29" without specifying which provision of the Bill of Rights had been violated. In the court of appeals, however, she clarified that her constitutional complaint was a "violation of Article 1, section 16." TEX. CONST. art. I, § 16 ("No bill of attainder, ex post facto law, retroactive law, or any law impairing the obligation of contracts, shall be made."). Petitioners contend that she waived this argument by failing to **\*377** raise it in the trial court. *See Tex. Dep't of Protective & Regulatory Servs. v. Sherry,* 46 S.W.3d 857, 861 (Tex.2001) (" '[A]s a rule, a claim, including a constitutional claim, must have been asserted in the trial court in order to be raised on appeal.' ") (citations omitted). Even if Heinrich's constitutional argument was properly presented, however, it has no merit. Heinrich does not challenge the governing statute or bylaws, but rather the Board's actions under those provisions. Indeed, Heinrich argues that "[t]he Pension Board and its individual members acted outside their authority and in violation of the Texas Constitution when they reduced [Heinrich's] benefits." Because Heinrich does not allege that any law sanctioned the retroactive reduction in her benefits, her constitutional argument fails. [8]

As we have repeatedly noted, the Legislature is best positioned to waive immunity, and it can authorize retrospective relief if appropriate. *See, e.g.,* TEX. LOCAL GOV'T CODE § 180.006 (enacted after *Williams* and waiving immunity for firefighter and police officer claims for back pay and civil penalties). There are cases in which prospective relief is inadequate to make the plaintiff whole, but the contours of the appropriate remedy must be determined by the Legislature.

Thus, Heinrich's claims for prospective relief may be brought only against the appropriate officials in their official capacity, and her statutory claims for future benefits against the City, Fund, and Board must be dismissed. [9] Heinrich's pleadings are unclear as to the capacity or capacities in which she has sued the individual Board members. The United States Supreme Court has observed that, "[i]n many cases, the complaint will not clearly specify whether officials are sued personally, in their official capacity, or both." *Kentucky v. Graham,* 473 U.S. 159, 167 n. 14, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985); *see also United States ex rel. Adrian v. Regents of Univ. of Cal.,* 363 F.3d 398, 403 (5th Cir.2004). In these cases, " '[t]he course of proceedings' in such cases typically will indicate the nature of the liability sought to be imposed."

*Graham,* 473 U.S. at 167 n. 14, 105 S.Ct. 3099 (citations omitted). Here, the injunctive relief Heinrich seeks would necessarily come from the Board, rather than the individual members. Considering "the nature of the liability sought to be imposed," *id.,* and construing Heinrich's pleadings liberally, *Miranda,* 133 S.W.3d at 226, we conclude that she has sued the Board members in their official capacities, and her claims are therefore not automatically barred by immunity. [10] To the extent that the court of appeals held that the suit is against the Board members in their individual capacities, we reverse that portion of its judgment.

**D**

**Evidence That Petitioners Acted** *Ultra Vires*

[15]    In their second issue, petitioners argue that governmental immunity prohibits **\*378** Heinrich's suit because Heinrich has offered no evidence that the reduction in her benefits was illegal or unauthorized. We conclude, however, that Heinrich has presented evidence raising a fact question on this issue.

[16]    "When a plea to the jurisdiction challenges the pleadings, we determine if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause. We construe the pleadings liberally in favor of the plaintiffs and look to the pleaders' intent." *Miranda,* 133 S.W.3d at 226 (citations omitted). Here, Heinrich alleges that petitioners violated article 6243b, section 10A(b) of the Texas Revised Civil Statutes when they reduced her benefits. Thus, if Heinrich's allegations are true, her suit would fall within the *ultra vires* exception to governmental immunity as described above.

[17]    [18]    This is not the end of our analysis, however: "if a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised, as the trial court is required to do." *Id.* at 227. If there is no question of fact as to the jurisdictional issue, the trial court must rule on the plea to the jurisdiction as a matter of law. *Id.* at 228. If, however, the jurisdictional evidence creates a fact question, then the trial court cannot grant the plea to the jurisdiction, and the issue must be resolved by the fact finder. *Id.* at 227–28. This standard mirrors our review of summary judgments, and we therefore take as true all

evidence favorable to Heinrich, indulging every reasonable inference and resolving any doubts in her favor. *Id.* at 228.

Petitioners argue that, in accordance with the governing bylaws, the payments to Heinrich were reduced when her son ceased to be eligible to receive them, and asserts that the statutory provisions Heinrich relies upon are "inapplicable." Conversely, Heinrich alleges that she was awarded 100% of her husband's pension in accordance with these provisions, and that petitioners' subsequent retroactive reduction of her benefits violated, among others, article 6243b, section 10A(a)(1) of the Texas Revised Civil Statutes. The relevant portions of article 6243b, section 10A provide:

> (a) Notwithstanding anything to the contrary in other parts of this Act and subject to Subsections (b) and (c) of this section, the Board of Trustees may, by majority vote of the whole board, make from time to time one or more of the following changes, or modifications:

> (1) modify or change prospectively or retroactively in any manner whatsoever any of the benefits provided by this Act, except that *any retroactive change or modification shall only increase pensions or benefits;*

> * * *

> (b) None of the changes made under Subsection (a) of this section may be made unless all of the following conditions are sequentially complied with:

> (1) the change must be approved by a qualified actuary selected by a four-fifths vote of the Board; the actuary's approval must be based on an actuarial finding that the change is supported by the existing funding status of the fund; the actuary, if an individual, must be a Fellow of the Society of Actuaries or a Fellow of the Conference of Actuaries in Public Practice or a Member of the American Academy of Actuaries; the actuary, if an actuarial consulting firm, must be established in the business of providing actuarial consulting services to pension plans and have experienced personnel able to provide the requested **\*379** services; the findings upon which the properly selected and qualified actuary's approval are based are not subject to judicial review;

> (2) the change must be approved by a majority of all persons then making contributions to the fund as employees of a department to which the change would directly apply, voting by secret ballot at an election held after ten (10) days' notice given by posting at a prominent

place in every station or substation of a department to which the change would directly apply and in the city hall;

TEX.REV.CIV. STAT. art. 6243b, § 10A (emphasis added). Under this statute, while benefits may be increased if certain procedures are followed, the Board has no discretion to retroactively lower pensions. Petitioners, however, cite the provisions of the 1980 bylaws, under which the reduction would be proper due to Heinrich's son's age. They therefore suggest that Heinrich erroneously relies on 1985 changes to the bylaws that increased the surviving spouse's share but were prospective only in nature and do not apply to Heinrich.

Heinrich submitted an affidavit from John Batoon, former Assistant City Attorney for El Paso.[11] Batoon's affidavit provided:

> I was serving as an Assistant City Attorney for the City of El Paso in 1985. I reviewed and approved the award to Ms. Lilli M. Heinrich of 100% of her deceased husband's, Charles D. Heinrich, benefits from The El Paso Firemen & Policemen's Pension Fund. All procedures were followed according to the Plan and according to law. The membership voted and approved of the benefits awarded Ms. Heinrich as was required by the Plan. Because Mr. Heinrich had been an outstanding police officer for the City of El Paso and because he was killed in the line of duty, the Board of Trustees and the membership voted to award Ms. Heinrich 100% of Mr. Heinrich's benefits.

>> Consideration of the amount of benefits awarded Ms. Heinrich was not based, in any way, on the fact that she had a minor child at that time. Ms. Heinrich was awarded 100% of the benefits because Mr. Heinrich had been a well-loved officer and his death was a terrible loss for the police department. It was the Board of Trustees and the membership's way of paying tribute to a fallen officer.

Along with this sworn testimony, the evidence included a pair of October 16, 1985 letters from the chief of police, one signed by the then-Board members, stating that "Mrs. Heinrich will receive 100% of her husband's final pension amount," and one unsigned, stating that 100% would go to "Mrs. Heinrich and her dependent children." The minutes of the November 20, 1985 Board meeting also indicate that the membership had previously voted to change benefits so that surviving spouses' benefits would increase from 66 2/3 to 100% of the pension amount. The Board contends that these bylaw changes do not apply to Heinrich, but even if they do not, Batoon's affidavit and the letters raise a fact

question as to whether Heinrich's individual benefits were increased to 100% of her husband's pension payments under the provisions of article 6243b and subsequently reduced in violation thereof. We conclude that the trial court correctly denied that portion of the plea to the jurisdiction **\*380** challenging Heinrich's claims against the individuals in their official capacities. *Miranda,* 133 S.W.3d at 227–28.

### E

### The Individuals' Immunity

In their final issue, petitioners assert that the trial court erred in denying the individual board members' plea to the jurisdiction based on governmental and official immunity. With the limited *ultra vires* exception discussed above, governmental immunity protects government officers sued in their official capacities to the extent that it protects their employers. *See Univ. of Tex. Med. Branch v. Hohman,* 6 S.W.3d 767, 776 (Tex.App.-Houston [1st Dist.] 1999, pet. dism'd w.o.j.).* Because of this exception, however, governmental immunity does not bar Heinrich's claims against the individuals in their official capacities. Official immunity, by contrast, is an affirmative defense protecting public officials from individual liability. *See Telthorster v. Tennell,* 92 S.W.3d 457, 459–60 (Tex.2002). Because we

hold that Heinrich has not sued the Board members in their individual capacities, official immunity is inapplicable here. [12]

### III

### Conclusion

In sum, because there is a question of fact as to whether Heinrich's pension payments have been reduced in violation of state law, her claims for prospective declaratory and injunctive relief against the Board members and the mayor in their official capacities may go forward, but we dismiss her retrospective claims against them. All of her claims against the City, Fund, and Board, however, are barred by governmental immunity, and we dismiss them. Finally, we hold that the Board members have not been sued in their individual capacities, and to the extent the court of appeals held otherwise, we reverse its judgment. We affirm in part and reverse in part the court of appeals' judgment and remand this case to the trial court for further proceedings. TEX.R.APP. P. 60.2(a),(d).

### Parallel Citations

52 Tex. Sup. Ct. J. 689

Footnotes

1    The City withheld a percentage of Charles's compensation (and that of other officers) to fund the plan.

2    The State of Texas and the Texas State Association of Fire Fighters submitted amicus curiae briefs.

3    We recently dismissed a claim for declaratory and injunctive relief against the Houston Municipal Employees Pension System in which the "plaintiffs ... requested that the trial court issue an injunction directing the pension board to comply with the trial court's interpretation of Article 6243h," the governing statute. *Houston Mun. Employees Pension Sys. v. Ferrell,* 248 S.W.3d 151, 158–59 (Tex.2007). Under Article 6243h, the Houston board's "interpretation of [the] Act [is] final and binding on any interested party," TEX.REV.CIV. STAT. art. 6243h § 2(y), and we held that this language precluded judicial review. *Ferrell,* 248 S.W.3d at 158 ("There is no right to judicial review of an administrative order unless a statute explicitly provides that right or the order violates a constitutional right.") (citations omitted). Here, however, Article 6243b contains no language similar to that in 6243h granting the Board exclusive authority to interpret the act, *see* TEX.REV.CIV. STAT. art. 6243b, and, in any case, Heinrich does not challenge petitioners' interpretation of 6243b, but rather alleges that they have violated that statute under an undisputed reading thereof. *See Ferrell,* 248 S.W.3d at 160 (Brister, J., concurring) ("A different case might be presented if the plaintiffs alleged the board was clearly violating some provision of the statute. Article 6243h gives the pension board complete discretion to interpret the statute, but not to violate it.").

4    The *Dodgen* Court expressly declined to limit *Epperson* based on changes in federal immunity jurisprudence. *Dodgen,* 308 S.W.2d at 843.

5    Because the policy embodied in the law extends only as far the amount wrongfully withheld, claims for amounts beyond those alleged to be due under the relevant law, such as consequential damages, remain barred by immunity.

6    For claims challenging the validity of ordinances or statutes, however, the Declaratory Judgment Act requires that the relevant governmental entities be made parties, and thereby waives immunity. TEX. CIV. PRAC. & REM.CODE §

37.006(b) ("In any proceeding that involves the validity of a municipal ordinance or franchise, the municipality must be made a party and is entitled to be heard, and if the statute, ordinance, or franchise is alleged to be unconstitutional, the attorney general of the state must also be served with a copy of the proceeding and is entitled to be heard."); *see Wichita Falls State Hosp. v. Taylor,* 106 S.W.3d 692, 697–698 (Tex.2003) ("[I]f the Legislature requires that the State be joined in a lawsuit for which immunity would otherwise attach, the Legislature has intentionally waived the State's sovereign immunity."); *Tex. Educ. Agency v. Leeper,* 893 S.W.2d 432, 446 (Tex.1994) ("The DJA expressly provides that persons may challenge ordinances or statutes, and that governmental entities must be joined or notified. Governmental entities joined as parties may be bound by a court's declaration on their ordinances or statutes. The Act thus contemplates that governmental entities may be—indeed, must be—joined in suits to construe their legislative pronouncements."). Here, Heinrich is not challenging the validity of the bylaws or the governing statute, but rather petitioners' actions under them.

7    State officials may, of course, be sued in both their official and individual capacities. Judgments against state officials in their individual capacities will not bind the state. *See Alden v. Maine,* 527 U.S. 706, 757, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999) ("Even a suit for money damages may be prosecuted against a state officer in his individual capacity for unconstitutional or wrongful conduct fairly attributable to the officer himself, so long as the relief is sought not from the state treasury but from the officer personally.").

8    Further, although the parties do not address it, we note that the reduction in Heinrich's survivor payments occurred before the effective date of article XVI, section 66 of the Texas Constitution ("Protected Benefits Under Certain Public Retirement Systems"), and we do not consider whether it would otherwise apply in this case.

9    While this case was pending on interlocutory appeal, the Legislature enacted 271.151–.160 of the Local Government Code, waiving immunity from suit for certain claims against cities and other governmental entities. Heinrich does not argue that her claims fall within these provisions, and we express no opinion on that subject.

10    Because the mayor of El Paso, who is also a Board member, was named as a defendant in his official capacity, Heinrich may seek liability from the City through that officer, although her claims against the City itself must be dismissed.

11    The Fund, the Board, and the Board members objected to this evidence. The trial court did not explicitly rule on the objections, and the petitioners do not raise any evidentiary issues on appeal.

12    The court of appeals failed to draw this distinction, instead discussing the protections available to officials from governmental immunity. 198 S.W.3d at 407. This conflict gives us jurisdiction over this interlocutory appeal. TEX. GOV'T CODE § 22.225(c), (e).

---

**End of Document**

© 2015 Thomson Reuters. No claim to original U.S. Government Works.

111 S.W.3d 274
Court of Appeals of Texas,
Texarkana.

Odell TERRELL, on Behalf of the ESTATE
OF J.R. TERRELL, Jr., and on Behalf of
the Estate of Virginia Terrell, David Elkins,
and Jimmy Wayne Terrell, Appellants,

v.

Robert M. SISK and Rains County, Texas, Appellees.

No. 06–02–00174–CV.    |    Submitted
June 19, 2003.    |    Decided July 16, 2003.

Survivors of motorists killed in collision with county employee brought action against county and county judge alleging failure to supervise, failure to train, failure to control, negligent implementation of policy, and negligent hiring. The 402nd Judicial District Court, Wood County, G. Timothy Boswell, J., dismissed for lack of subject matter jurisdiction. Survivors appealed. The Court of Appeals, Ross, J., held that: (1) county employee driving her own car to doctor's appointment was not acting within scope of her employment; (2) joint enterprise did not exist between employee, judge, and county; (3) judge did not act in bad faith by failing to request drug test of employee; and (4) official immunity barred negligence claims against judge.

Affirmed.

**Attorneys and Law Firms**

**\*276** Christopher A. Kalis, Law Offices of Christopher A. Kalis, Dallas, for appellants.

Robert T. Bass, Allison, Bass & Associates, LLP, Austin, for appellees.

Before MORRISS, C.J., ROSS and CARTER, JJ.

**OPINION**

Opinion by Justice ROSS.

Odell Terrell, on behalf of the estates of J.R. Terrell, Jr., and Virginia Terrell, David Elkins, and Jimmy Wayne Terrell (the Terrell family) [1] appeal from an order granting a plea to the

jurisdiction filed by Rains County and Robert M. Sisk, the county judge of Rains County, and dismissing the Terrell family's lawsuit. We affirm.

The lawsuit stemmed from an automobile accident resulting in serious personal injuries to, and ultimately the deaths of, J.R. Terrell, Jr., and his wife, Virginia. The accident was caused by June Goble, Judge Sisk's secretary, while on her way to a doctor's appointment. The Terrell family alleged that Goble was in a drug-induced stupor, that Judge Sisk knew she had been misusing prescription drugs but made no effort to control the situation through her employment, and that her medical visit on the date of the accident was "in furtherance of County business." The lawsuit was filed against Rains County and Judge Sisk. [2] The County and Judge Sisk raised sovereign immunity and official immunity as defenses.

In the sole issue presented for review, the Terrell family challenges the trial court's order granting the plea to the jurisdiction. The Terrell family has presented a number of arguments in an effort to support that contention. We will address those as necessary, but recognize that the main thrust of their contentions is that, as to the County and Judge Sisk, sovereign immunity has been waived by the Texas Tort Claims Act. [3] They contend there is a cause of action for failure to supervise, for failure to train, for failure to control, for negligent implementation of policy, negligent hiring (or retention), and that "joint enterprise" applies.

 **[1]**    As to the claims against Rains County, the only question is whether sovereign immunity has been waived. If not, then no claim against the County can prevail. Under the doctrine of sovereign immunity, a governmental unit is not liable for the torts of its officers or agents in the absence of a constitutional or statutory provision creating such liability. *Dallas County Mental Health & Mental Retardation v. Bossley,* 968 S.W.2d 339, 341 (Tex.1998). In the absence of the state's consent to suit, a trial court lacks subject matter jurisdiction and must dismiss. The Tort Claims Act creates that limited waiver of sovereign immunity. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 101.021 (Vernon 1997).

As a governmental unit, Rains County is immune from both suit and liability unless the Tort Claims Act has waived that immunity. **\*277** Section 101.021 of the Tort Claims Act has been interpreted as waiving sovereign immunity in three general areas: "use of publicly owned automobiles, premises defects, and injuries arising out of conditions or use of property." *Tex. Dep't of Transp. v. Able,* 35 S.W.3d

608, 611 (Tex.2000), *quoting Lowe v. Tex. Tech Univ.,* 540 S.W.2d 297, 298 (Tex.1976). Pursuant to Section 101.021, a governmental unit in the state is liable for:

(1) property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if:

(A) the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and

(B) the employee would be personally liable to the claimant according to Texas law; and

(2) personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

TEX. CIV. PRAC. & REM.CODE ANN. § 101.021.

The lack of subject matter jurisdiction is properly raised by a plea to the jurisdiction. *Tex. Dep't of Transp. v. Jones,* 8 S.W.3d 636, 638 (Tex.1999) (correcting a number of misunderstandings on that point).[4] The plaintiff has the burden to show that jurisdiction exists by alleging facts that affirmatively demonstrate that the trial court has subject matter jurisdiction. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.,* 852 S.W.2d 440, 446 (Tex.1993); *City of Midland v. Sullivan,* 33 S.W.3d 1, 6 (Tex.App.-El Paso 2000, pet. dism'd w.o.j.). In the context of suit against a governmental unit, the plaintiff must allege consent to suit either by reference to statute or express legislative permission. *Jones,* 8 S.W.3d at 638; *Sullivan,* 33 S.W.3d at 6.

In our analysis, the question of subject matter jurisdiction is a legal question which we review de novo. *Sullivan,* 33 S.W.3d at 6. We examine the pleadings, taking as true the facts pled, and we determine whether those allegations of fact support jurisdiction in the trial court. *Tex. Ass'n of Bus.,* 852 S.W.2d at 446. In so doing, we construe the pleadings in favor of the pleader. *Id.* If necessary, we may review the entire record to determine if there is jurisdiction. *Id.* If the petition does not allege jurisdictional facts, the plaintiff's suit is subject to dismissal only when it is impossible to amend the pleadings to confer jurisdiction. *See id.* In this case, special exceptions directed at this matter were raised, and the Terrell family had the opportunity to amend their pleadings.

The facts alleged by the Terrell family are that the damage was caused by the private vehicle of the driver (Judge Sisk's secretary) while that driver was on her way to a doctor's appointment. There is no allegation of an express waiver of immunity. Thus, in order to fall under the Tort Claims Act exception, the Terrell family must show that the use of the vehicle was part of the scope of the driver's employment by the County. "Scope of employment" is defined as "the performance for a governmental unit of the duties of an employee's office or employment **\*278** and includes being in or about the performance of a task lawfully assigned to an employee by competent authority." TEX. CIV. PRAC. & REM.CODE ANN. § 101.001(5) (Vernon Supp.2003).

There are no allegations in the Terrell family's pleadings that can reasonably be interpreted as showing that the driver was acting within the scope of her employment at the time of the accident. She was not traveling at the direction of her employer. There is nothing to suggest this trip to the doctor was any part of the performance of her duties as an employee; rather, the pleadings show conclusively it was a personal activity away from the workplace.

The Terrell family also alleged, however, that Goble's trip to the doctor was a part of her employment—and thus her use of her car was actionable under the vehicle exception to the Tort Claims Act. They argue that this theory applies because Judge Sisk had, on an earlier occasion, directed Goble to go home, and because he permitted her to leave on this occasion.

The underlying principle is that an employee is generally not in the course and scope of employment while driving his or her own vehicle to or from his or her place of employment. *Mata v. Andrews Transp., Inc.,* 900 S.W.2d 363, 366 (Tex.App.-Houston [14th Dist.] 1995, no writ). This rule is based on the premise that an injury occurring while traveling to or from work has nothing to do with the risks associated with a place of employment. *Smith v. Tex. Employers' Ins. Ass'n,* 129 Tex. 573, 105 S.W.2d 192, 193 (1937).

There is an exception to this rule that applies when an employee undertakes a special mission for his or her employer. *Direkly v. ARA Devcon, Inc.,* 866 S.W.2d 652, 654 (Tex.App.-Houston [1st Dist.] 1993, writ dism'd w.o.j.). A special mission is a specific errand that an employee undertakes at the specific request of the employer. *Wilie v. Signature Geophysical Servs., Inc.,* 65 S.W.3d 355, 359

(Tex.App.-Houston [14th Dist.] 2001, pet. denied); *Upton v. Gensco, Inc.,* 962 S.W.2d 620, 621–22 (Tex.App.-Fort Worth 1997, pet. denied). However, the Terrell family's counsel has explicitly stated in a post-submission letter to this Court that the "special mission" concept does not apply to the facts of this case. We will therefore not further address that theory.

There is no allegation of fact to show that, on the occasion of this accident, the employee went to the doctor at the specific request of Judge Sisk. There is also no allegation of fact to support the Terrell family's theory that Rains County had a duty to keep Goble from leaving her workplace. There is nothing in the Terrell family's pleadings that can be read to support the application of the Tort Claims Act to allow them to pursue a cause of action against Rains County. The plea to the jurisdiction was therefore properly granted.

 **[2]**    The Terrell family also contends the County has waived its sovereign immunity because it was in a joint enterprise with Goble. They so contend because Judge Sisk allowed Goble to use her personal vehicle to occasionally run errands for the County and because the County's health insurance plan provided the drugs Goble was taking, and Judge Sisk allowed her to go to the doctor to obtain those drugs and did not attempt to stop her.

In *Able,* the Texas Supreme Court held that "a governmental unit that enters into a joint enterprise can be liable under the waiver of sovereign immunity found in the Tort Claims Act." *Able,* 35 S.W.3d at 610. In that case, the plaintiffs alleged a premises defect involving a state highway. *See id.* at 612. The plaintiffs also alleged that a joint enterprise existed between the Texas **\*279** Department of Transportation (TxDOT) and the Houston Metropolitan Transit Authority (Metro) with respect to the highway. *See id.* at 610. As a party to a joint enterprise with Metro, the plaintiffs contended TxDOT was equally responsible for the premises defect. *See id.* at 613.

 **[3]**    A plaintiff must show four elements to prove the existence of a joint enterprise: (1) an agreement, express or implied, among the members of the group; (2) a common purpose to be carried out by the group; (3) a community of pecuniary interest in that purpose, among the members; and (4) an equal right to a voice in the direction of the enterprise, which gives an equal right of control. *Id.*; *Tex. Dep't of Transp. v. City of Floresville Elec. Power & Light Sys.*, 53 S.W.3d 447, 456 (Tex.App.-San Antonio 2001, no pet.).

Arguably, there was an agreement, and a common purpose, between Goble and the County, as the Terrell family alleges. However, neither the "pecuniary interest" nor the "equal right to control" elements make any sense in the context of a benefit provided for an employee by an employer. There is no real pecuniary interest involved as a profit-making business arrangement between the parties. The County provided health insurance as a benefit. That was arguably a pecuniary benefit to Goble. The health benefits are provided by doctors, who presumably receive a pecuniary benefit from their use. In return, the County receives—not money—but a worker who is more satisfied with his or her employment and is thus more likely to remain employed by the County.

Further, the mere fact that an employee has the ability to choose the doctor whom he or she will visit does not indicate such employee has "control" over a joint enterprise. It simply shows that the employee has the ability under the provided insurance contract to choose which doctor he or she will visit.

In light of the fact the Texas Supreme Court has held that even business relationships such as a franchisor, wholesaler, or supplier do not have a "community of pecuniary interest" adequate to show the existence of a joint enterprise, neither can we find any indication a joint enterprise exists in this situation. *See St. Joseph Hosp. v. Wolff,* 94 S.W.3d 513, 528 (Tex.2002).

 **[4]**    The Terrell family then takes a different direction in their pleadings concerning Judge Sisk. They allege that Judge Sisk was the negligent party and that his negligence was the proximate cause of the deaths because of his failure to enforce the County's drug-testing policy. The policy, as stated in the Terrell family's brief, provided that an "employee suspected of drug/alcohol abuse may be requested to take a test. If an employee refuses to take this test or fails a test, they are subject to immediate dismissal."

The initial question is whether this alters the analysis set out above for Judge Sisk in his official capacity as the county judge. Article IX, Section 1 of the Texas Constitution provides that counties are legal subdivisions of the state. TEX. CONST. art. IX, § 1. A suit against a government official in his or her official capacity seeks to impose liability only on the governmental entity the official represents, and any judgment in this type of suit is collectible only against the governmental entity, not against the official's personal assets. *Kentucky v. Graham,* 473 U.S. 159, 166, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985); *Herring v. Houston Nat'l Exch. Bank,* 113 Tex.

264, 253 S.W. 813 (1923); *Harris County v. Walsweer,* 930 S.W.2d 659, 665 (Tex.App.-Houston [1st Dist.] 1996, writ denied); *Winograd v. Clear Lake City Water* **\*280** *Auth.,* 811 S.W.2d 147, 162 (Tex.App.-Houston [1st Dist.] 1991, writ denied); *see also Bowles v. Reed,* 913 S.W.2d 652, 655 (Tex.App.-Waco 1995, writ denied) (suit against county official is a suit solely against the county); *Bowles v. Wade,* 913 S.W.2d 644, 649, 649 n. 13 (Tex.App.-Dallas 1995, writ denied) (suits against public officials are suits against the entities for whom they work and official-capacity judgments impose liability on the entity).

 **[5]**    As a public official sued in his official capacity, Judge Sisk is protected by the same sovereign immunity enjoyed by the state agency he represents. *Tex. Dep't of Health v. Rocha,* 102 S.W.3d 348, 353 (Tex.App.-Corpus Christi, 2003, no pet.); *Denson v. T.D.C.J.-I.D.,* 63 S.W.3d 454, 460 (Tex.App.-Tyler 1999, pet. denied); *Morris v. Copeland,* 944 S.W.2d 696, 698–99 (Tex.App.-Corpus Christi 1997, no writ). Because a suit against a state officer in his or her official capacity is equivalent to a suit against the state, employees acting in their official capacity share their employer's sovereign immunity. *Rocha,* 102 S.W.3d at 353; *Denson,* 63 S.W.3d at 460; *Morris,* 944 S.W.2d at 698–99; *see also Sykes v. Harris County,* 89 S.W.3d 661, 669 (Tex.App.-Houston [1st Dist.] 2002, pet. filed); *Univ. of Tex. Med. Branch at Galveston v. Hohman,* 6 S.W.3d 767, 775 (Tex.App.-Houston [1st Dist.] 1999, pet. dism'd w.o.j.) (holding employee sued in her official capacity was shielded by sovereign immunity). Accordingly, a plea to the jurisdiction is procedurally the proper method of contesting the propriety of the lawsuit against him or her as a public official.

The Terrell family alleges Judge Sisk is liable to them for two main reasons: 1) the judge knew his secretary at least occasionally had problems (i.e., sleeping on the job) caused by her use of prescription medications, but had negligently failed to exercise the County's policy to require her to undergo drug testing; and 2) the judge knew on that particular occasion that his secretary was in no condition to drive her automobile and was thus negligent in allowing her to drive to her doctor's appointment. We will first analyze these allegations as viewed through the window of sovereign/official immunity of a public servant.

 **[6]**    In determining whether a waiver of the application of sovereign immunity is shown in this context, a critical question is whether the employee of a governmental unit

would be personally liable under Texas law. A government employee is entitled to official immunity for (1) the performance of discretionary duties (2) that are within the scope of the employee's authority, (3) provided the employee acts in good faith. *City of Lancaster v. Chambers,* 883 S.W.2d 650, 653 (Tex.1994); *see also DeWitt v. Harris County,* 904 S.W.2d 650, 652 (Tex.1995).

In deciding whether the facts alleged fall outside the scope of official immunity, we recognize that the basis for alleged liability is the County's policy, which explicitly provides that requiring a drug test of an employee is absolutely discretionary, and that the Terrell family has alleged the accident was caused by Judge Sisk while acting within the scope of his official duties. The sole disputed question then becomes whether he acted in good faith.

If Judge Sisk was performing a discretionary function, then he is protected by official immunity, regardless of whether he was negligent in the exercise of his public duties. *See City of Wichita Falls v. Norman,* 963 S.W.2d 211, 215 (Tex.App.-Fort Worth 1998, pet. dism'd w.o.j.). The Terrell family cannot breach the immunity wall merely because Judge Sisk was negligent—they can only do so if Judge Sisk exercised his discretionary authority in **\*281** bad faith. *See Harless v. Niles,* 100 S.W.3d 390 (Tex.App.-San Antonio 2002, no pet.).

The Terrell family must do more than show that a reasonably prudent supervisor could have acted differently; they must show that no reasonable person in Judge Sisk's position could have thought the facts were such that they justified his acts. *See Chambers,* 883 S.W.2d at 657. Good faith is not defeated simply by a showing of negligence. *Wadewitz v. Montgomery,* 951 S.W.2d 464, 467 n. 1 (Tex.1997).

Good faith is established when it is proved that a reasonably prudent government official, under the same or similar circumstances, could have believed that his actions were justified. *Chambers,* 883 S.W.2d at 656. A government employee acts in bad faith only if that employee could not have reasonably reached the decision in question. *Univ. of Houston v. Clark,* 38 S.W.3d 578, 581 (Tex.2000). Good faith can be established as a matter of law when the factual recitation by the governmental unit's employee is otherwise supported by the evidence. *Dovalina v. Nuno,* 48 S.W.3d 279, 283 (Tex.App.-San Antonio 2001, no pet.); *Alamo Workforce Dev., Inc. v. Vann,* 21 S.W.3d 428, 434–35 (Tex.App.-San Antonio 2000, no pet.). The Terrell family alleged negligence. Although they also used the term "good faith" throughout

their pleadings, the allegations involving that language are the same ones used in their allegations of negligence.[5]

The facts concerning the accident alleged by the Terrell family do not support a finding that Judge Sisk acted in bad faith, either for failing to require Goble to undergo a drug test, or in connection with her driving to her doctor's office in her own vehicle. Requiring a drug test was discretionary on the part of the county judge, and there are no facts alleged showing any directive by Judge Sisk to Goble to drive her automobile. Taking the allegations at their most extreme possible meaning, with maximal inferences applied, they at most show questionable judgment, and thus possibly show negligence. They do not show the absence of good faith, which is necessary to avoid the sovereign immunity bar. Accordingly, the trial court did not err by concluding Judge Sisk, riding on the coattails of sovereign immunity of his county, is not amenable to suit in his official capacity.

**[7]** **[8]** We next consider whether claims were raised against Judge Sisk in his individual capacity. State employees sued in their individual capacities may be liable for their negligence if they do not have official immunity. *Sykes,* 89 S.W.3d at 669; *Denson,* 63 S.W.3d at 460.

We have reviewed the pleadings in detail. Although there are places where the Terrell family referred to claims against Judge Sisk in his personal capacity, there were no claims raised involving any act by the judge outside of his public servant persona. This is not a situation where there is a mixture of allegations, some of which are directed at actions taken outside a public capacity. In this case, all allegations were of claimed wrongdoing or negligence by Judge Sisk in actions he was able to take only because of his position as a public servant. Under these circumstances, we conclude that a fair reading of the Terrell family's pleadings is that there **\*282** was no effective pleading against Judge Sisk in his individual capacity.

**[9]** **[10]** The Terrell family has also raised a federal Section 1983 claim against Judge Sisk. A suit against a state official in his or her official capacity is not a suit against the official, but against the official's office and the state for which the

official is an agent. *Will v. Mich. Dep't of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989); *City of Hempstead v. Kmiec,* 902 S.W.2d 118, 122 (Tex.App.-Houston [1st Dist.] 1995, no writ). The suit is therefore the same as one brought directly against the state. *Will,* 491 U.S. at 71, 109 S.Ct. 2304; *Kmiec,* 902 S.W.2d at 122. The United States Supreme Court has held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will,* 491 U.S. at 71, 109 S.Ct. 2304; *see Harrison v. Tex. Dep't of Criminal Justice–Institutional Div.,* 915 S.W.2d 882, 889–90 (Tex.App.-Houston [1st Dist.] 1995, no writ). The Court went on to explain that, "As such, it is no different from a suit against the State itself." *Will,* 491 U.S. at 71, 109 S.Ct. 2304.

Therefore, as a government official in his official capacity, Judge Sisk is not a "person" under Section 1983. Section 1983 of the Civil Rights Act provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C.A. § 1983 (West Supp.2003).

Section 1983 was not designed to override sovereign immunity. *Will,* 491 U.S. at 66, 109 S.Ct. 2304. Accordingly, the Section 1983 claim made against Judge Sisk in his official capacity could not serve to avoid the application of sovereign immunity and the claim was properly the subject of the plea to the jurisdiction.

We affirm the judgment.

Footnotes

1    Odell Terrell is a surviving brother of J.R. Terrell, Jr. David Elkins is the surviving son of Virginia Terrell, and Jimmy Wayne Terrell is the surviving son of J.R. Terrell, Jr.

2      The style of the lawsuit in the Terrell family's pleadings does not specify whether Judge Sisk was sued in his personal capacity or in his capacity as county judge (and the supervisor of his secretary). We will therefore review the pleadings to determine the nature of the Terrell family's claims.

3      TEX. CIV. PRAC. & REM.CODE ANN. § 101.021(1)(A), (B) (Vernon 1997).

4      Since as early as 1847, the law in Texas has been that, absent the state's consent to suit, a trial court lacks subject matter jurisdiction. *Tex. Dep't of Transp. v. Jones,* 8 S.W.3d 636, 638 (Tex.1999). A party may contest a trial court's subject matter jurisdiction by filing a plea to the jurisdiction. *Id.*

5      "When a petition fails to specify the capacity in which a person is sued, we will look at the 'course of the proceedings' to determine the nature of the liability the plaintiff seeks to impose." *Harless v. Niles,* 100 S.W.3d 390 (Tex.App.-San Antonio 2002, no pet.), *quoting Nueces County v. Ferguson,* 97 S.W.3d 205, 215 (Tex.App.-Corpus Christi 2002, no pet.).

---

**End of Document**                                        © 2015 Thomson Reuters. No claim to original U.S. Government Works.

[PDF] Original Image of 440 S.W.3d 621 (PDF)

440 S.W.3d 621
Supreme Court of Texas.

In re The STATE BAR OF TEXAS.

No. 13–0161. | Argued Feb. 6, 2014. | Decided Aug. 22, 2014.

**Synopsis**

**Background:** Commission for Lawyer Discipline petitioned for a writ of mandamus to the district court regarding its ruling that expunction order in case underlying alleged prosecutorial misconduct precluded the Commission from relying on any expunged records.

**[Holding:]** The Supreme Court, Devine, J., held that order denying request by Commission to use expunged records was an abuse of discretion.

Writ conditionally granted.

Boyd, J., concurred in the judgment and filed opinion in which Willett, J., joined.

**Attorneys and Law Firms**

**\*622** Gregory Max Hasley, Jennifer A. Hasley, Hasley Scarano, L.L.P., Houston, TX, for Other interested party Jon L. Hall.

Barry C. Willey, Donald S. Glywasky, Jack Duane Roady, Galveston County Crim. Dist., Galveston, TX, for Other Interested Party Jack Roady.

Christopher L. Tritico, Lloyd James Krell, Ron S. Rainey, Tritico Rainey PLLC, Houston, TX, for Other interested party Vikram Vu.

Taft Foley, The Foley Law Firm, Houston, TX, for Real Party in Interest Joshua Bledsoe.

Cynthia Canfield Hamilton, Senior Appellate Disciplinary Counsel, Laura Kathryn Bayouth, Linda A. Acevedo, Office of the Chief Disciplinary Council, Austin, TX, for Relator State Bar of Texas.

**Opinion**

Justice DEVINE delivered the opinion of the Court, in which Chief Justice HECHT, Justice GREEN, Justice JOHNSON, Justice GUZMAN, Justice LEHRMANN, and Justice BROWN joined.

A person wrongfully arrested for a crime "is entitled to have all records and files relating to the arrest" expunged, if certain conditions are met. TEX.CODE CRIM. PROC. art. 55.01(a). One such condition is an acquittal. *Id.* art. 55.01(a)(1)(A). The statute thus serves to protect wrongfully-accused people by eradicating their arrest records.

In this original mandamus proceeding, the Commission for Lawyer Discipline complains that a former prosecutor, facing allegations of prosecutorial misconduct, has used an expunction order to block the Commission's prosecution. A district court has refused the Commission access to expunged criminal records for use in the disciplinary proceeding against the former prosecutor and has ordered the Commission to turn over investigative records. The grievance panel in the collateral disciplinary proceeding has construed the district court's actions as a bar to the disciplinary proceeding and granted the former prosecutor's summary judgment motion. Because we conclude that the expungement order does not bar the Commission from using records from the criminal trial in the grievance proceeding, we conditionally grant the writ.

**I**

This mandamus relates to a disciplinary proceeding against former prosecutor Jon L. Hall, who allegedly suppressed exculpatory evidence in an aggravated robbery prosecution. The Commission's involvement began in November 2011, when it received a news article about the aggravated robbery trial. The article reported that **\*623** Joshua Bledsoe was acquitted because the prosecutor suppressed exculpatory evidence.

The Commission began by interviewing, among others familiar with the case, the judge who presided over the trial and the attorney who represented Bledsoe. Shortly thereafter, the Commission anonymously received a partial trial transcript that included discussions between the trial judge and counsel regarding the prosecution's suppression of evidence, including a 911 tape.

WestlawNext © 2015 Thomson Reuters. No claim to original U.S. Government Works.

In that tape, the robbery victim made statements that she later contradicted during trial. At trial, the victim identified Bledsoe as one of the robbers based partially on his race, but in the 911 call, the same witness claimed that she could not provide any description of the robbers, including race, because they wore masks.

Following its investigation, the Commission commenced a disciplinary action against Hall, the lead prosecutor in the aggravated robbery case, and Vikram Vij, an assistant prosecutor. The Commission subsequently dismissed the action against Vij. Hall elected to have his disciplinary action proceed before a grievance panel rather than in district court.

In answer to the Commission's evidentiary petition, Hall complained that he did not have access to records necessary to his defense because all records from the aggravated robbery case had been expunged. After receiving Hall's answer, the Commission, with Bledsoe's consent, filed a motion in the trial court that had presided over the criminal prosecution and signed the expunction order. The motion sought access to the expunged records for use in the pending disciplinary action. Although Hall had complained about not having access to the criminal-case records, he nevertheless responded to the Commission's motion by urging the trial court to deny access to the expunged records.

The Commission's motion was assigned to a visiting judge, sitting by assignment for the trial court. Following a hearing, the visiting judge concluded that the underlying expunction order precluded the Commission from relying on any of the expunged records and ordered the Commission to turn over all information in its possession related to Bledsoe's arrest, including the partial trial transcript. The order also barred for any purpose "any document or other evidence derived from the underlying criminal case and subject to the District Court's expunction order or derived from the arrest of J.B. and subject to the District Court's expunction order."

Meanwhile, in response to Hall's requests, the grievance panel chair ordered restrictions on the Commission's discovery in the disciplinary action. The order recited that the Commission could not acquire or use any documents or other evidence related to the underlying criminal case and expungement order until the trial court amended the expungement, if it did. Hall subsequently moved to strike the evidentiary petition, to dismiss the disciplinary proceeding, and for summary judgment. The Commission sought a stay so that it could seek relief from the trial court's order. The grievance panel denied

the Commission's stay request and, based on the trial court's order, granted Hall's summary judgment motion.

The Commission has appealed the panel's summary judgment to the Board of Disciplinary Appeals and has sought review of the trial court's order in the court of appeals. The Commission advises that both reviews have been stayed, pending our review of the Commission's petition for writ of mandamus.

The Commission submits that mandamus relief in this Court is appropriate because the court of appeals cannot redress the ultimate consequence of the trial **\*624** court's order— the dismissal of the Commission's disciplinary action. That dismissal can only be challenged in a separate appeal to the Board of Disciplinary Appeals. The Commission submits that the attendant risk of conflicting appellate decisions that can only be reconciled in this Court suggests the present mandamus as the appropriate remedy. *See, e.g., In re State Bar of Texas,* 113 S.W.3d 730, 732 (Tex.2003) (concluding that mandamus was the appropriate remedy to correct district court's interference in the regulation of the legal practice). We turn then to that review.

## II

 **[1]**  **[2]**  **[3]**  Expunction is not a right; it is a statutory privilege. *T.C.R. v. Bell Cnty. Dist. Attorney's Office,* 305 S.W.3d 661, 663 (Tex.App.-Austin 2009, no pet.). The expunction statute is an exception to the established principle that court proceedings and records should be open to the public. *See, e.g., Express–News Corp. v. MacRae,* 787 S.W.2d 451, 452 (Tex.App.-San Antonio 1990, orig. proceeding) (recognizing constitutional right to public trials and presumptively open court records); TEX.CODE CRIM. PROC. art. 1.24 (requiring public trials). The statute is designed to protect wrongfully-accused people from inquiries about their arrests. *See Ex parte S.C.,* 305 S.W.3d 258, 263–64 (Tex.App.-Houston [14th Dist.] 2009, no pet.) (stating "statute was enacted to prevent the record of a wrongful arrest from negatively impacting a person for the remainder of his life").

The statute provides for a truncated expunction procedure that requires neither filing a petition nor a hearing. TEX.CODE CRIM. PROC. art. 55.02 § 1. The truncated procedure commences with a defendant's request for expunction, such as a request made orally on the record by defense counsel. *Id.* The acquitted defendant must provide the trial court

with certain information, including a list of all officials and agencies to be named in the expunction order and notified of the expunction proceedings. *Id.* art. 55.02 §§ 1, 2(b). Within thirty days of acquittal, the trial court is to enter the expunction order, which is prepared and filed by defense counsel or by the prosecutor, if the acquitted defendant is not represented by counsel. *Id.* art. 55.02 § 1. The court clerk then sends a certified copy of the expunction order to the Department of Public Safety and to each of the officials and agencies named in the order. *Id.* art. 55.02 § 3(c).

"On receipt of the order, each official or agency or other governmental entity named in the order" is required to return to the court all records and files that are subject to the order or, if their return is impracticable, to obliterate all information identifying the acquitted defendant. *Id.* art. 55.02 § 5(a)(1). Any of the entities named in the order may appeal the order as in civil cases generally. *Id.* art. 55.02 § 3(a). The clerk is directed to destroy the collected files and records in some cases, but the files and records are not destroyed in the case of an acquittal. *Id.* art. 55.02 § 5(d). In acquittal cases, the clerk maintains the expunged records and files but generally only the acquitted defendant has access to them. *Id.* art. 55.02 § 5(c).

Expunction, however, is not absolute. The statute provides for exceptions, permitting the retention of records and files, if they may be needed in future criminal or civil proceedings. *Id.* art. 55.02 § 4. Article 55.02 provides two exceptions for acquittal cases which apply if "(1) the records and files are necessary [to investigate and prosecute] a person other than the person who is the subject of the expunction order; or (2) the state establishes that the records and files are necessary for use in (A) another criminal case ...; or (B) a **\*625** civil case, including a civil suit or suit for possession of or access to a child." *Id.* art. 55.02 § 4(a–2)(1), (2).

### III

Bledsoe was acquitted in the underlying criminal prosecution on June 17, 2011. Despite the statute's directive that the court enter the expunction order "not later than the 30th day after the acquittal," the expunction order was not signed until December 28, 2011. By that time, the Commission's preliminary investigation into prosecutorial misconduct was virtually complete. The Commission, of course, had no direct connection to the criminal prosecution and no apparent knowledge of the expunction proceedings. The expunction

order did not name the Commission as a respondent in possession of records to be expunged. Nor did the order make an exception for the Commission to use expunged records in its prosecution.

The Commission filed its Original Evidentiary Petition in the disciplinary proceeding in July 2012. Hall answered in August, complaining that the expunction order handicapped his ability to defend himself. In response, the Commission moved to modify the expunction order in the criminal trial court. The motion recited that the Commission had recently learned of the order's possible existence but that it had not been served with a certified copy of the order nor been given notice of an expunction hearing. *See* TEX.CODE OF CRIM. PROC. art. 55.02 § 3(c). The Commission requested access to records and files in the underlying criminal case for the purpose of prosecuting disciplinary proceedings against third parties.

The trial court denied the request. It further ordered the Commission to turn over any material in its investigation file related to Bledsoe's arrest and broadly ordered the Commission not to use any evidence derived from the underlying criminal case in any manner. This order, signed by the visiting judge on December 11, 2012, is the subject of the Commission's request for mandamus relief.

The Commission argues that the court's order perverts the expunction statute's purpose. It submits that a statute designed to protect an acquitted defendant's reputation has been applied to impede the disciplinary prosecution of the person accused of violating the acquitted defendant's rights. The Commission further notes that the acquitted defendant fully supports the Commission's use of the expunged records in the disciplinary case against the former prosecutor. In fact, the acquitted defendant filed a brief supporting the Commission's mandamus petition in this Court, and his lawyer appeared at oral argument. The Commission concludes that the court's application of the expunction statute is a clear abuse of discretion because it ignores the acquitted defendant's wishes, contravenes the statute's primary purpose, and interferes with the Commission's ability to prosecute the disciplinary action before the grievance panel.

[4] [5] We agree that the court's December 11 order, denying the Commission's request to use expunged records in the disciplinary action, is an abuse of discretion. A person can, in effect, "unexpunge" his records by putting those records at issue in another proceeding. *See, e.g., W.V. v. State,* 669

S.W.2d 376, 378–79 (Tex.App.-Dallas 1984, writ ref'd n.r.e.) (holding that retention of files was not necessary to afford protection from potential civil action because expunged records would be held by district clerk and could be retrieved if needed for subsequent proceedings); *see also Thomas v. City of Selma,* 2006 WL 2854405, \*3 (W.D.Tex. Oct. 4, 2006) (holding that district clerk must produce arrest records for use in suit based on arrest). Bledsoe has done precisely **\*626** that, making his arrest and prosecution a matter of public record, by filing a federal lawsuit against Hall and other defendants based on his arrest and prosecution. The Commission advises that Hall filed the full transcript of Bledsoe's trial as a summary judgment exhibit in federal court and that it is publicly available on the Internet. *See Bledsoe v. Galveston Cnty. Dist. Attorney's Office,* No. 4:13–CV–00469, Document 52–2 (S.D. Tex. filed Feb. 21, 2013) (*available at* https:// www.pacer.gov).

The Commission argues that if an acquitted defendant can make expunged records public by filing a lawsuit based on his wrongful prosecution, he should likewise be able to make the records public by participating in a grievance proceeding based on the wrongful prosecution. Thus, if Hall can use the expunged records to defend himself in federal court, he can also use them to defend himself in the disciplinary action. And, if Hall has the right to use the expunged records, they should also be available to the Commission. The acquitted defendant supports the Commission's use of the expunged records in the disciplinary case, and we conclude that he has the right to voluntarily waive his expunction rights for this purpose. *In re Expunction of Jones,* 311 S.W.3d 502, 505 (Tex.App.-El Paso 2009, no pet.) (citing TEX.CODE CRIM. PROC. art. 1.14(a)). We conclude further that the court abused its discretion in disregarding the acquitted defendant's voluntary waiver, particularly in light of the Commission's expressed need for the records to prosecute the disciplinary proceeding.

 **[6]**    The expunction statute's purpose is not to eradicate all evidence of wrongful conduct. *See Gomez v. Tex. Educ. Agency,* 354 S.W.3d 905, 917–18 (Tex.App.-San Antonio 2011, pet. denied) (holding that a police officer's eyewitness testimony in a contested case administrative hearing was not barred by an expunction order issued before the hearing, but after the administrative petition); *Ex parte S.C.,* 305 S.W.3d at 266 (holding an expunction order overbroad because it included state securities board's investigation records mentioning S.C.); *Bustamante v. Bexar Cnty. Sheriff's Civil Serv. Comm'n,* 27 S.W.3d 50, 53–54 (Tex.App.-San

Antonio 2000, pet. denied) (concluding that civil service commission did not rely on expunged records or files but on officers' testimony about their personal observations). The statute thus cannot reasonably be construed to apply to all investigative files and records generated by a state agency, like the Commission in this case.

The grievance panel, however, interpreted the visiting judge's order as precluding the Commission from proceeding in the disciplinary action. The Commission argued against that construction and presented evidence independent of the expunged records, including the affidavit from the judge who presided over the criminal trial, but to no avail. The panel chair concluded that there was "no way we can get the evidence" and that "as [the trial court's] order stands, then we have to grant the no-evidence motion for summary judgment."

In barring the Commission's use of any document or other evidence derived from the underlying criminal case, the court construes the expunction statute at odds with the acquitted defendant's interests. A process intended to protect acquitted defendants has been used as a shield against charges of prosecutorial misconduct. Moreover, the court's order fails to consider that an expunction order may except records needed for future investigations and proceedings by a prosecutor or a law enforcement agency. TEX.CODE CRIM. PROC. art. 55.02 § 4(a–2). The exception extends not only to criminal matters, but  **\*627**  to civil cases as well. *Id.* art. 55.02 § 4(a–2)(2)(B). And, as already mentioned, an acquitted defendant who obtains an expunction may subsequently waive the statute's protection. Given the waiver expressed by the acquitted defendant, the relevance of the expunged records to the disciplinary proceeding, and the Commission's expressed need for those records, the trial court abused its discretion by extending the expungement order to the Commission and thereby interfering in the disciplinary proceeding.

An order that directly interferes with the Commission's ability to collect and present evidence is as much a direct interference in the disciplinary process as an order directed to a grievance panel itself. *See State Bar of Tex. v. Jefferson,* 942 S.W.2d 575 (Tex.1997) (orig. proceeding) (granting mandamus relief against district court that enjoined disciplinary proceedings before a grievance panel); *State v. Sewell,* 487 S.W.2d 716 (Tex.1972) (orig.proceeding) (same). Because the court's order interferes with the disciplinary process, disrupting the regulatory scheme promulgated by this Court to govern cases of attorney discipline, we conditionally grant relief and direct

the trial court to vacate its order of December 11, 2012. We are confident the district court will comply, and the writ will issue only if it does not.

Justice BOYD filed a concurring opinion, in which Justice WILLETT joined.

Justice BOYD, joined by Justice WILLETT, concurring in the judgment.

The Court concludes in this case "that [an] expungement order does not bar the Commission [for Lawyer Discipline] from using records from [a] criminal trial in [a subsequent] grievance proceeding." *Ante* at 622. The Court reaches this conclusion because (1) the defendant in the criminal case "has the right to voluntarily waive his expunction rights" and has done so here, *ante* at 626; (2) the trial court's construction of the expunction statute "contravenes the statute's primary purpose" and is "at odds with the acquitted defendant's interests," *ante* at 626; and (3) the trial court's order "interferes with the disciplinary process, disrupting the regulatory scheme promulgated by this Court to govern cases of attorney discipline," *ante* at 627. In my view, the latter two reasons, even if true, provide an inadequate basis to ignore the unambiguous language of the expunction statute. But I agree with the Court's first reason and therefore concur in the judgment.

Article 1.14 of the Texas Code of Criminal Procedure affirms that a defendant in a criminal prosecution "may waive any rights secured him by law." TEX.CRIM. PROC.CODE art. 1.14(a). Article 55.01 provides a defendant a right to expunction that may be waived. *See, e.g., In re Expunction of Jones,* 311 S.W.3d 502 (Tex.App.-El Paso 2009, no pet.) (holding that a defendant knowingly waived his rights to expunction under article 1.14). The defendant in this case consented to the Commission's motion for access to the expunged records for use in the pending disciplinary action and has filed a brief in support of the Commission's petition in this Court. Article 55.01 grants a right to the defendant, not the prosecutor, and I agree that in this case the defendant has waived that right.

There is no need in this case for the Court to consider whether the trial court's order "contravenes" the expunction statute's unexpressed purpose or "interferes with the disciplinary process." Because the defendant has waived his rights under the expunction statute, I agree that the trial court abused its discretion by denying **\*628** the Commission access to the criminal trial record.

**Parallel Citations**

57 Tex. Sup. Ct. J. 1253

---

**End of Document**

© 2015 Thomson Reuters. No claim to original U.S. Government Works.

[PDF] Original Image of 982 S.W.2d 939 (PDF)

982 S.W.2d 939
Court of Appeals of Texas,
Houston (1st Dist.).

Jack Edward LOVE, Appellant,
v.
THE STATE BAR OF TEXAS, Appellee.

No. 01–95–01340–CV. | Dec. 17,
1998. | Rehearing Overruled Dec. 17, 1998.

State Bar filed disciplinary petition against attorney. The 270th District Court, Harris County, J.F. Clawson, J., entered post-answer default judgment and disbarred attorney. He appealed. On denial of motion for rehearing en banc, the Court of Appeals, Schneider, C.J., held that: (1) allegations in petition were sufficient to support application of prior State Bar rules rather than the new Texas Rules of Disciplinary Procedure; (2) evidence was sufficient to show attorney violated former State Bar disciplinary rules; and (3) trial court did not abuse its discretion in disbarring attorney.

Judgment affirmed.

**Attorneys and Law Firms**

**\*941** Jack E. Love, Houston, for Appellant.

Linda A. Acevedo, Mary Klapperich, Houston, Austin, for Appellee.

Before Chief Justice SCHNEIDER and Justices WILSON and HEDGES.

**OPINION**

MICHAEL H. SCHNEIDER, Chief Justice.

The Court considered the appellee's motion for rehearing en banc. A majority of the justices of the Court voted to deny the motion. However, the panel withdraws its prior opinion, and issue this opinion in its place.

This is an attorney disciplinary action that resulted in the disbarment of appellant, Jack Edward Love. The controlling issue in this case is whether the disciplinary action against Love was brought under article X of the former State Bar Rules or the current Texas Rules of Disciplinary Procedure. We hold that the State Bar Rules apply, and affirm the judgment of the trial court.

*Facts and Procedural History*

On June 21, 1990, Love appeared as counsel for a criminal defendant in Harris County Criminal Court at Law No. 10. After arriving an hour late for a 9:00 a.m. hearing, Love attempted to obtain a trial setting, but was directed by the court to confer with the prosecution before attempting to set a trial date. While court was still in session, Love left the courtroom without resetting or otherwise disposing of his client's case and without conferring with the prosecution as instructed by trial judge. Love did not return for two hours.

The court concluded all other matters, and, along with Love's client, awaited his return. The court eventually reset the cause and directed Love's client to return the following day. After the trial judge retired to chambers, Love returned to the courtroom. The court coordinator explained to Love that the court had reset the cause for the next day. Love became angry and in the presence of court personnel, made antisemitic remarks regarding the trial judge.

On August 14, 1990, Love was found guilty of three counts of misdemeanor contempt. For each count, Love was assessed punishment of six months in jail and a fine of $500. Love filed a writ of habeas corpus to the Texas Court of Criminal Appeals. The Court, en banc, upheld the first two findings of contempt and set aside the third. Love then filed a writ of habeas corpus in federal district court. This writ was dismissed.

On July 29, 1994, the State Bar filed its first disciplinary petition against Love. The petition was based on the first two contempt findings and violations of Texas Disciplinary Rules of Professional Conduct 3.02, 3.04(c)(5), 8.04(a)(2) and (4). TEX DISCIPLINARY R. PROF'L CONDUCT 3.02, 3.04, 8.04, *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit, G app. A (Vernon Supp.1997) (TEXAS STATE BAR R. art. X, § 9). Although Love was properly notified and had an answer on file, he did not appear at trial. Thus, the trial court entered a post-answer default judgment against Love, and, based on the evidence presented by the State Bar, disbarred Love. Love's motion for new trial was denied, and this appeal followed.

### The Applicable Rules of Professional Conduct

The disposition of the case ultimately hinges on which set of disciplinary rules applies to the disciplinary action against Love. To make that determination, we must determine what effect the Texas Rules of Disciplinary **\*942** Procedure, [1] which became effective on May 1, 1992, had on then pending disciplinary matters involving attorney conduct that occurred prior to May 1, 1992. Texas Rule of Disciplinary Procedure 1.04 provides in pertinent part:

> These rules apply prospectively to all attorney professional disciplinary and disability proceedings commenced on and after [May 1, 1992] ... [T]he State Bar Rules ... are repealed *except to the extent that they apply to then pending disciplinary matters.*
> TEX.R. DISCIPLINARY P. 1.04 (emphasis added).

Love argues that the disciplinary rules in effect at the time of trial apply, absent the State Bar pleading and proving that the disciplinary investigation against him was pending prior to May 1, 1992. Love contends the language in rule 1.04 implementing the Rules of Disciplinary Procedure effectively engrafts additional pleading and proof requirements on the State Bar in disciplinary matters prosecuted under the former State Bar Rules. We disagree.

 **[1]**   **[2]**   Promulgated rules have the same force and effect as statutes. *Missouri Pac. R.R. Co. v. Cross,* 501 S.W.2d 868, 872 (Tex.1973). Consequently, rules should be interpreted in accordance with the rules of statutory construction. *Knight v. Intern. Harvester Credit Corp.,* 627 S.W.2d 382, 384 (Tex.1982). The primary goal of interpretation is to determine what the enacting body intended. *Id.* Here, our goal is to determine what the Texas Supreme Court intended by enacting Texas Rule of Disciplinary Procedure 1.04 and the resulting effect on disciplinary investigations commenced before May 1, 1992. We must interpret rule 1.04, and, in the process, harmonize and give effect to the entire set of disciplinary rules. *See Martin v. Sheppard,* 129 Tex. 110, 102 S.W.2d 1036, 1039 (Tex.1937).

 **[3]**   **[4]**   A cardinal rule of statutory construction is that every word used must be presumed to have been used for a purpose. *Cameron v. Terrell & Garrett, Inc.,* 618 S.W.2d 535, 540 (Tex.1981). It is also presumed that words excluded were left out for a purpose. *Id.* The language of rule 1.04 is absolutely silent regarding the existence of any additional

pleading requirements on the State Bar to prosecute claims under the old State Bar Rules. Therefore, we must presume that the absence of such language was intentional. *See Martin,* 102 S.W.2d at 1039.

Moreover, Texas Rule of Disciplinary Procedure 1.03 requires us to broadly construe the new rules "to ensure the operation, effectiveness, integrity, and continuation of the professional disciplinary and disability system." TEX. R. DISCIPLINARY P. 1.033. If we were to accept Love's contention that the State Bar was required to plead and prove a pending disciplinary investigation, we would essentially be reading Texas Rule of Disciplinary Procedure 1.04 to do away with an entire class of disciplinary matters that were based on conduct that occurred prior to May 1, 1992, but that were not commenced until after the Texas Rules of Disciplinary Procedure became effective. We decline to accept Love's reading of rule 1.04. Such a construction would not only hamper the State Bar's efforts to control attorney conduct, but would engraft additional requirements on the State Bar not expressly imposed by the Texas Supreme Court. *See Sharp v. House of Lloyd, Inc.,* 815 S.W.2d 245, 249 (Tex.1991) (noting that court construing a statute should consider consequences of construction).

Therefore, we hold that the State Bar was not required to plead and prove that there was a pending disciplinary investigation against Love prior to May 1, 1992, to prosecute Love under the State Bar rules. To invoke the jurisdiction of the trial court, all that was required of the State Bar was that they plead sufficient facts to show that the trial court had jurisdiction. *Texas Ass'n of Bus. v. Texas Air Control Bd.,* 852 S.W.2d 440, 446 (Tex.1993).

 **[5]**   In its First Amended Disciplinary Petition, the State Bar referred to the applicable rules in pertinent part as follows:

> **\*943** Petitioner brings this disciplinary action pursuant to the State Bar Act, Tex. Gov't.Code Ann. § 81.000, et seq. (Vernon 1988) and the State Bar rules. The *complaints* which forms (sic) the basis of the First Amended Disciplinary Petition were filed prior to May 1, 1992. The acts and conduct of Respondent, as hereinafter described, constitute professional misconduct under the State Bar Rules. Art. X, § 57.

The State Bar's petition specifically stated they were bringing "this disciplinary action pursuant to the State Bar Act, TEX. GOV'T. CODE ANN. § 81.000, et seq. (Vernon 1988) and the State Bar rules." They specifically referred to complaints that had been filed against Love prior to the effective date of the Texas Rules of Disciplinary Procedure.

 [6]    [7]    We find this language sufficient to support the application of the State Bar Rules. *See State Bar of Texas v. Dolenz,* 893 S.W.2d 113, 114–15 (Tex.App.—Dallas 1995, writ denied) (holding that disciplinary action based on conduct occurring before effective date of Texas Rules of Disciplinary Procedure governed by State Bar Rules). Where pleadings do not affirmatively show an absence of jurisdiction, a presumption exists in favor of jurisdiction. *See Peek v. Equipment Servc. Co. of San Antonio,* 779 S.W.2d 802, 804 (Tex.1989). Here, the State Bar's pleadings do not affirmatively show that the State Bar Rules do not apply. Therefore, it was incumbent on Love to show the trial court why the State Bar Rules should not apply. [2] Having failed to show up for trial, Love did not meet this burden.

In conclusion, we decline Love's invitation to impose additional pleading requirements on the State Bar absent some legislative directive. The State Bar's petition did not affirmatively show the trial court lacked jurisdiction. Therefore, we presume the action against Love was properly before the trial court, and hold the trial court did not err in applying the State Bar Rules rather than the new Texas Rules of Disciplinary Procedure.

### Statute of Limitations

 [8]    Love argues the trial court erred in entering a post-answer default judgment against him because the disciplinary action was barred by the statute of limitations. Love did not appear at trial or offer any evidence. However, he argues the State Bar did not controvert his verified answer that asserted the action was barred by limitations.

 [9]    [10]    [11]    [12]    A statute of limitations plea is an affirmative defense. TEX.R. CIV. P. 94. The defendant bears the initial burden of proving an affirmative defense. *See Woods v. William M. Mercer, Inc.,* 769 S.W.2d 515, 517 (Tex.1988). A defendant relying on an affirmative defense must plead, prove, and secure findings to sustain the defense. *Id.* Pleadings, even those that are verified, are not evidence of the truth of their allegations. *Stanley, Harris, Rice & Assoc. v. Lewis,* 410 S.W.2d 533, 534 (Tex.Civ.App.—Dallas 1966, no writ); *Kroger Co. v. Warren,* 410 S.W.2d 194, 196 (Tex.Civ.App.—Tyler 1966, no writ). Moreover, a defendant with an affirmative defense who fails to appear at trial, and offers no evidence to support that defense, effectively waives that affirmative defense. *Stoner v. Thompson,* 578 S.W.2d 679, 685 (Tex.1979); *RE/MAX of Texas, Inc. v. Katar Corp.,* 961 S.W.2d 324, 327 (Tex.App.—Houston [1st Dist.] 1997, no writ); TEX. R. CIV. P. 94.

Here, there is no evidence in the record proving or disproving Love's statute of limitations claims. Therefore, we overrule Love's first point of error.

### Violation of Disciplinary Rules

Love also contends the State Bar did not meet its burden of proving a violation of disciplinary rules. We disagree.

### Standard of Review

 [13]    An appellant, who did not have the burden of proof on an issue at trial, and who attacks the legal sufficiency of an adverse **\*944** finding on that issue, must demonstrate that there is no evidence to support the finding. *Croucher v. Croucher,* 660 S.W.2d 55, 58 (Tex.1983); *Stephanz v. Laird,* 846 S.W.2d 895, 898 (Tex.App.—Houston [1st Dist.] 1993, writ denied). In reviewing a no evidence point, we consider only the evidence and inferences that tend to support the finding. *Weirich v. Weirich,* 833 S.W.2d 942, 945 (Tex.1992). If there is any evidence to support the finding, then the finding will be upheld. *Southern States Transp., Inc. v. State,* 774 S.W.2d 639, 640 (Tex.1989).

 [14]    [15]    [16]    Additionally, when a party, like Love in the present case, fails to request findings of fact and conclusions of law, the appellate court presumes the trial court made all necessary findings to support its judgment. *See Worford v. Stamper,* 801 S.W.2d 108, 109 (Tex.1990); *Magill v. Magill,* 816 S.W.2d 530, 532 (Tex.App.—Houston [1st Dist.] 1991, writ denied). In determining whether some evidence supports the judgment, we consider only the evidence most favorable to the judgment and disregard all evidence that is opposed to it or contrary in nature. *See Worford,* 801 S.W.2d at 109; *Ulrich v. Ulrich,* 652 S.W.2d 503, 506 (Tex.App.—Houston [1st Dist] 1983, no writ). The judgment of the trial court must

be affirmed if the judgment is supported by any evidence in the record. *See In re W.E.R.,* 669 S.W.2d 716, 717 (Tex.1984).

### Discussion

 **[17]**   Here, when Love returned to the courtroom after a two hour absence, and without conferring with the prosecution, the court coordinator explained to him that the trial judge had reset his case for the following day. Love, to say the least, was not pleased. In the presence of court personnel, Love became angry, abusive, and then proceeded to personally attack the trial judge. Love stated:

> "There was a time that Jews could not serve on the bench. That little Jew will never call me a liar again." He further stated: "Do you remember or understand what happened in France to the Jews? The Jews were dug up from the grave and hung. That little Jew is not going to get away with this. That little Jew doesn't know this but I will have a cross burned in his front yard tonight. The Klu Klux Klan will not put up with this. That little Jew is not going to call me a liar ever again. I will see to it that that judge is impeached just like that drunk Don Hendrix."

We find this evidence more than sufficient to support the trial court's finding that Love violated the disciplinary rules. Therefore, we overrule his second point of error.

### Excessive Punishment

Finally, Love argues that disbarment was excessive punishment, disproportionate to the conduct alleged, and amounted to an abuse of discretion. We find his contention without merit.

### Standard of Review

 **[18]**    **[19]**    A trial court has broad discretion to determine the consequences of professional misconduct. *State Bar of Texas v. Kilpatrick,* 874 S.W.2d 656, 659 (Tex.1994). However, the judgment of a trial court in a disciplinary proceeding may be so light or heavy as to amount to an abuse of discretion. *Id.* The guiding rules and principles to determine the appropriate sanction for an attorney guilty of professional misconduct are set out in Texas Rule of Disciplinary Procedure 3.10. TEX.R. DISCIPLINARY P. 3.10. To determine the appropriate

sanction, the trial court must consider the relevant factors set forth in Rule 3.10, including: (1) the nature and degree of the misconduct; (2) loss or damage to clients; (3) damage to the profession, assurance that others will be insulated from the type of misconduct found; (4) profit to the attorney; (5) avoidance of repetition; (6) deterrent effect on others; (7) maintenance of respect for the legal profession; (8) conduct of the attorney during Committee action; (9) trial of the cause; and (10) other relevant evidence concerning attorney's personal and professional background. *Id.* We will only reverse the trial court's decision if an abuse of discretion is shown. A trial court abuses its discretion when it acts without reference to any guiding rules and principles and the test is whether the trial court's act was arbitrary and unreasonable. *Downer* **\*945** *v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241 (Tex.1986). However, the mere fact that a trial court may decide a matter differently than an appellate court does not demonstrate an abuse of discretion. *Id.*

### Discussion

 **[20]**    The trial court found that Love had violated Rules 3.04(a)(5), 8.04(a)(2), and 8.04(a)(4) of the Texas Disciplinary Rules of Professional Conduct. Additionally, the court took notice of Love's two prior criminal contempt convictions for professional misconduct. Love's punishment for these prior convictions consisted of a two-year suspension, one year active and one year probated, and a 24–day active suspension, respectively. Taking into consideration the nature of Love's misconduct, the bad light in which he cast the legal profession, the potential damage to his client, the desire to deter similar conduct in the future, and Love's prior professional misconduct, we find the trial court did not abuse its discretion.

We overrule Love's third point of error.

### Conclusion

The rules governing lawyer conduct serve many purposes. However, in their most basic form, the rules are designed to insure integrity for the legal system and those who work within that system. "[T]he right to practice law is a very great privilege. With this privilege comes an equal dose of responsibility." *State Bar of Texas v. Moore,* 932 S.W.2d 132, 138 n. 4 (Tex.App.—El Paso), *vacated,* 938 S.W.2d 717 (Tex.1997). As an officer of the court, Love had a

responsibility and "duty to protect its integrity." *Gentile v. State Bar of Nevada,* 501 U.S. 1030, 1076, 111 S.Ct. 2720, 2745, 115 L.Ed.2d 888 (1991). We hold Love breached this duty by his conduct.

The judgment of the trial court is affirmed.

A majority of the justices of the Court voted to deny appellee's motion for rehearing en banc. TEX.R.APP. P. 49.7.

Footnotes

1   The Texas Rules of Disciplinary Procedure superceded article X of the State Bar Rules. Amended Order for Implementation of the Texas Rules of Disciplinary Procedure, 833–834 S.W.2d (Texas Cases) XXXVII (Tex.1991).

2   Additionally, we note that the State Bar's pleading provided fair and adequate notice to Love that the disciplinary action against him was being brought under the former State Bar Rules. If Love believed the State Bar's petition was vague, ambiguous, or misleading, he had an opportunity to complain by special exception. He failed to do so and, therefore, waived his objection. *Hitt v. Mabry,* 687 S.W.2d 791, 795–96 (Tex.App.—San Antonio 1985, no writ).

**End of Document**                                                      © 2015 Thomson Reuters. No claim to original U.S. Government Works.

[PDF] Original Image of 891 S.W.2d 243 (PDF)

891 S.W.2d 243
Supreme Court of Texas.

THE STATE BAR OF TEXAS, James Parsons, III,
in his capacity as President of the State Bar of Texas
and Karen Johnson, in her capacity as Executive
Director of the State Bar of Texas, Petitioners,
v.
Maria GOMEZ, Alicia Naveja, and Leonardo
Chavez, on Behalf of Themselves and
Others Similarly Situated, Respondents.

No. D–4218. | Argued Jan. 20,
1994. | Decided Dec. 22, 1994.

Indigents brought action for declaratory and injunctive relief to require State Bar or Supreme Court to implement mandatory pro bono program for state lawyers. The 353rd Judicial District Court, Travis County, Joseph H. Hart, J., dismissed for lack of subject matter jurisdiction, and indigents appealed. The Court of Appeals, J. Woodfin Jones, J., 856 S.W.2d 804, reversed and remanded. On application for writ of error, the Supreme Court, Cornyn, J., held that indigents' action to compel State Bar or Supreme Court to implement mandatory pro bono program did not present justiciable controversy and, therefore, district court lacked jurisdiction over action.

Reversed and remanded.

Gonzalez, J., concurred and filed opinion.

Hightower, J., dissented and filed opinion in which Gammage and Spector, JJ., joined.

Doggett, J., noted his dissent.

**Attorneys and Law Firms**

 *244 Lynn Liberato, Houston, Linda A. Acevedo, Austin, Alene Ross Levy, Jeffrey T. Nobles, Houston, Broadus A. Spivey, Eric R. Galton, James M. McCormack, Austin, for petitioners.

Virginia Agnew, Charles Herring, Jr., James C. Harrington, Austin, for respondents.

**Opinion**

CORNYN, Justice, delivered the opinion of the Court, in which PHILLIPS, Chief Justice, and HECHT and ENOCH, Justices, join.

The sole question presented for our determination is whether the district court below has jurisdiction of this suit, which complains of the failure of the State Bar of Texas to compel member lawyers to provide free legal services to Texans who cannot pay for those services. We conclude that the district court correctly dismissed the case for lack of jurisdiction. Thus, we reverse the judgment of the court of appeals and remand this case to the district court with instructions to dismiss. [1]

After being refused free legal services, Maria Gomez, Alicia Naveja, and Leonardo Chaves, on behalf of themselves and others similarly situated (collectively, Gomez), filed suit in a Travis County district court against the State Bar of Texas and two of its officials at that time, James Parsons III, President, and Karen Johnson, Executive Director (collectively, State Bar). Gomez contends that the State Bar, by not effectively encouraging attorneys to volunteer free legal services, has illegally failed to meet the legal needs of indigent Texans. Specifically, Gomez alleges violations of the following provisions of the Texas Constitution: (1) Article I, Section 13 (open courts); (2) Article I, Section 3 (equal protection); (3) Article I, Section 3a (equal rights); (4) Article I, Section 19 (due course of law); and (5) Article I, Section 29 (inviolate nature of the Bill of Rights). Gomez further asserts violations of the Texas antidiscrimination statute, [2] the Texas Disciplinary Rules of Professional Conduct, [3] and the Texas Lawyer's Creed. [4]

The district court dismissed the case, concluding it lacked jurisdiction under Article V, Section 8, of the Texas Constitution. [5] The court of appeals reversed, holding that the district court had jurisdiction to decide the merits of Gomez's claims, but because of this Court's exclusive authority to regulate the legal profession in Texas, it held that the district court could levy only a prohibitory, and not a mandatory injunction against the State Bar. 856 S.W.2d 804 (Tex.1993). The court of appeals explained:

> We conclude that a district court does not have authority to grant relief that would *245 unreasonably usurp the

supervisory control vested exclusively in the supreme court. By vesting the supreme court with supervisory control of the practice of law, the constitution and the State Bar Act grant the supreme court *discretion* to decide issues concerning the State Bar and the practice of law. Whether a district court has authority to grant a particular form of injunctive relief depends, we believe, on whether granting such relief would effectively exercise the kind of supervisory discretion that is vested exclusively in the supreme court.

856 S.W.2d at 815. We agree with the court of appeals' identification of the issue but not its conclusion.

 **[1]**    **[2]**    The jurisdictional question presented is complex and in some ways unique. As a general proposition, before a court may address the merits of any case, the court must have jurisdiction over the party or the property subject to the suit, jurisdiction over the subject matter, jurisdiction to enter the particular judgment, and capacity to act as a court. *See Austin Indep. Sch. Dist. v. Sierra Club,* 495 S.W.2d 878, 881 (Tex.1973). Subject matter jurisdiction requires that the party bringing the suit have standing, that there be a live controversy between the parties, and that the case be justiciable. *See Texas Ass'n of Business v. Texas Air Control Bd.,* 852 S.W.2d 440, 443–46 (Tex.1993). If the district court lacks jurisdiction, in any of these senses, then its decision would not bind the parties. *See Austin Indep. Sch. Dist.,* 495 S.W.2d at 881 (noting that collateral attacks on a judgment are allowed when the district court lacked jurisdiction). And, a decision that does not bind the parties is, by definition, an advisory opinion prohibited by Texas law. *See Texas Ass'n of Business,* 852 S.W.2d at 444 (citing Article II, Section 1, of the Texas Constitution as prohibiting advisory opinions).

 **[3]**    **[4]**    The unique aspect of this jurisdictional inquiry, as the court of appeals recognized, arises out of this Court's power to regulate the practice of law in the State of Texas. This power is derived from both statutory and inherent powers. The primary statutory grant of power is found in the State Bar Act, which gives the Court administrative control over the State Bar and provides a statutory mechanism for promulgating regulations governing the practice of law. *See* TEX.GOV'T CODE § 81.011(c). The other source of this court's power to regulate the practice of law in this state, its inherent power, is not secured by any legislative grant or specific constitutional provision, but is necessarily implied to enable the Court to discharge its constitutionally imposed duties. *See Eichelberger v. Eichelberger,* 582 S.W.2d 395, 398–99 (Tex.1979) (noting that doctrine of inherent power is derived, in part, from the separation

of powers dictated by Article II, Section 1 of the Texas Constitution). Those duties include our obligation, as the head of the judicial department, to regulate judicial affairs. Because the admission and practice of Texas attorneys is inextricably intertwined with the administration of justice, the Court must have the power to regulate these activities in order to fulfill its constitutional role. *See generally* JIM R. CARRIGAN, INHERENT POWERS OF THE COURTS 2 (1973) (defining inherent powers as those "reasonably required to enable a court to perform efficiently its judicial functions, to protect its dignity, independence and integrity, and to make its lawful actions effective"). The Court's inherent powers, such as the power to regulate the practice of law, are not *jurisdictional* powers. *See Eichelberger,* 582 S.W.2d at 399. These powers are *administrative* powers, necessary to the preservation of the judiciary's independence and integrity.

 **[5]**    **[6]**    Because the Court's power to regulate the practice of law is an administrative one, the exercise of that power does not in and of itself deprive lower courts of general subject matter jurisdiction over challenges to that governance. They do not, however, have jurisdiction over *all* such challenges because in every individual case, jurisdiction also depends on justiciability. And, as the court of appeals acknowledged, for a controversy to be justiciable, there must be a real controversy between the parties that will be actually resolved by the judicial relief sought. 856 S.W.2d 804, 811 (citing *Texas Ass'n of Business,* 852 S.W.2d at 446 and **\*246** *Board of Water Eng'rs v. City of San Antonio,* 155 Tex. 111, 283 S.W.2d 722, 724 (1955)). While we do not find it necessary to set the precise boundaries of the district court's jurisdiction under these circumstances, we hold that these facts do not present a justiciable controversy and that the district court therefore has no jurisdiction.

 **[7]**    Gomez seeks to compel either the State Bar or this Court to implement a mandatory pro bono program for Texas lawyers. To the extent a remedy is sought against the State Bar, Gomez seeks relief from an entity that is powerless, acting alone, to implement that remedy. The State Bar's authority is limited to proposing regulations to this Court, which may accept or reject any recommendation, in whole or in part. *See* TEX.GOV'T CODE § 81.024(a). For example, when the latest amendment to the rules governing lawyer advertising was recommended by the State Bar, we modified the proposed amendment before promulgation. *See* Amended Order of Promulgation and Adoption of Disciplinary Rules, West's Texas Cases Advance Sheet 884–885 issue 49, pp. LXIX–LXXXI. Thus, the relief sought against the State Bar,

even if granted by the trial court, could not resolve the dispute between these litigants.

 **[8]**    Moreover, to the extent the remedies are sought against the Supreme Court, they would clearly impinge on the Court's exclusive authority to regulate the practice of law. The Legislature itself implicitly acknowledged the Court's fundamental authority in this area when it enacted the State Bar Act as *an aid* to the Court in carrying out this function. *See* TEX.GOV'T CODE § 81.011(b). No subordinate court in Texas has the power to usurp our authority or responsibility in this area. The dissenting justices acknowledge this limitation when they say, "An injunction mandating this court or the State Bar to implement a mandatory pro bono program would be improper. It would inappropriately involve the district court in the regulation of the practice of law." *Infra,* 891 S.W.2d at 252 (citations omitted).

This is not to say that all remedies bearing upon the regulation of the legal profession would be unacceptable infringements on the inherent powers of the Court. Had this Court actually promulgated rules establishing a pro bono program and had Gomez challenged the constitutionality of such rules, the district court would have jurisdiction to decide, in the first instance, whether such rules met constitutional standards. *See O'Quinn v. State Bar,* 763 S.W.2d 397 (Tex.1988) (upholding the trial court's decision on a constitutional challenge to the rules of disciplinary conduct promulgated by the Court). In due course, we would review any adverse determination in our adjudicative capacity. *See Cameron v. Greenhill,* 582 S.W.2d 775, 777 & n. 3 (Tex.1979) (holding that the Court could both promulgate a rule and determine its constitutionality). The important distinction between such a case and the one at hand is that in the former case, the district court would not be cast in the impermissible role of effectively promulgating policies and regulations governing Texas lawyers. Such a case would be justiciable because the district court would be capable of rendering a judgment that accords the parties complete relief, subject of course to appellate review.

But when, as here, the essence of a complaint is that this Court has failed to establish rules governing some aspect of lawyer conduct, a district court has no authority to assume this Court's authority to regulate the legal profession. This prohibition includes the rendition of orders that would, as a practical matter, preempt this Court's authority. Because the district court cannot effect a remedy that would resolve this dispute, this case does not present

a justiciable controversy. Once again, acknowledging the limitations on the district court's authority in this area, the dissenting justices nevertheless contend, "The district court does, however, have jurisdiction to issue a mandatory injunction which requires the State Bar to implement a more effective *voluntary* pro bono program calculated to meet constitutional and statutory demands which may exist." *Infra,* 891 S.W.2d at 252 (emphasis added). We are at a loss to understand, and the dissenting justices do not explain, how a mandatory injunction to enforce a *voluntary* program could ever be enforced by any court. By limiting the district court's jurisdiction to such illusory relief, the dissenting justices have, in effect, conceded that the **\*247** trial court cannot grant plaintiffs the real relief they seek.

Our decision that the district court lacks jurisdiction does not, however, leave the parties without a forum in which to seek redress of their grievances. This Court, in the exercise of its constitutional responsibilities, wants and needs input from interested persons concerning its supervisory responsibility over Texas lawyers. Ordinarily, interested parties would be free to informally petition this Court in its administrative capacity, to urge reconsideration of the proper constitutional mandates for this Court's regulation of attorney conduct. However, given the potentially far-reaching effects of this particular challenge to our scheme of regulation, we direct that this matter be placed on the Court's administrative agenda for further consideration. All interested parties have until April 14, 1995, to submit their written arguments on the merits of the underlying claims. *Cf. Barger v. Brock,* 535 S.W.2d 337, 342 (Tenn.1976) (ordering a lower court to dismiss a challenge to the Supreme Court's rules but directing the lower court to forward the petitions for further consideration as a direct motion in the Supreme Court).

Accordingly, we reverse the judgment of the court of appeals and remand to the district court with instructions to dismiss for want of jurisdiction.

DOGGETT, J., dissents.

GONZALEZ, Justice, concurring.

This case presents significant issues of public policy. Respondents seek a court declaration that indigent citizens of our State are entitled to free legal services in civil cases. They also seek an injunction that would require the State Bar of Texas to implement a program mandating pro bono legal services from all attorneys licensed to practice law in Texas. [1]

For the reasons stated in the majority opinion, I agree with the trial court and this Court that this case does not present a justiciable controversy within the trial court's jurisdiction. I thus concur in the judgment.

I write separately because I disagree with the Court prolonging resolution of the mandatory pro bono issue by placing the matter "on the Court's administrative agenda for further consideration." 891 S.W.2d at 247. This procedure is unnecessary, and it gives Respondents false hope that a majority of the Court is seriously considering implementing such a sweeping change in the practice of law in Texas. As for the invitation for interested parties to submit more briefs to the Court, I think that any information which anyone gives the Court will merely duplicate what we already have for determining the merits of Respondents' request. The issue of how to provide legal services for the indigent is a problem in our society that has been widely debated and studied. More hearings, briefs, or argument before us will be of little utility.

Mandating any program for legal services to the poor is a political question, over which this Court in its administrative capacity and the Legislature would have jurisdiction. However, in my opinion, any attempt to draft and implement such a program would unnecessarily divert the Court from its primary business of adjudicating disputes. The Legislature is better suited to undertake the activities necessary for drafting and implementing a program to provide indigents legal services. Different program options, as well as their legal and constitutional ramifications, will need to be considered. Since the problem of access to legal services faces society as a whole, the burden of resolving it does not solely rest on the legal profession.

I acknowledge that a very real problem exists for individuals who seek legal representation but lack the financial resources to retain counsel. Studies clearly document that our poor citizens need greater access to legal services. *See, e.g.,* COMMITTEE ON LEGAL SERVICES TO THE POOR IN CIVIL MATTERS, STATE BAR OF TEXAS, REPORT ON MANDATORY PRO BONO (1991); STATE BAR OF TEXAS ET AL., LEGAL NEEDS OF THE POOR ASSESSMENT PROJECT (1991). This need led the Court to create the Texas Equal Access to Justice foundation in 1984 to administer the voluntary **\*248** IOLTA (Interest on Lawyers' Trust Accounts) program.[2] *See* TEXAS EQUAL ACCESS TO JUSTICE PROGRAM §§ 1–9 (effective May 19, 1994), *reprinted in* TEX.GOV'T CODE, tit. 2, subtit. G app. (STATE BAR RULESS art. XI, §§ 1–9). In December,

1988, we signed an order that made the IOLTA program mandatory. *Id.* (amended December 13, 1988). We took this action under our authority to regulate the practice of law.

Realistically, the Court has progressed as far as it can to extend legal services to the poor. A mandatory pro bono program is quite different from the IOLTA program. This Court lacks the resources and/or the political will to attempt further resolution of the profound problem of providing legal services for indigent citizens. I would tell Respondents frankly that we are not going to order mandatory pro bono. The Legislature is better suited to tackle this social problem.

HIGHTOWER, Justice, joined by GAMMAGE and SPECTOR, Justices, dissenting.

Because I believe that the district court has jurisdiction of this suit and that the Court would effectively deny the Plaintiffs' access to a meaningful forum in which to seek redress of their grievances, I respectfully dissent.

## I.

The jurisdictional inquiry begins with Article V, Section 8 of the Texas Constitution which provides in part:

> District Court jurisdiction consists of exclusive, appellate, and original jurisdiction of all actions, proceedings and remedies, *except in cases where exclusive, appellate, or original jurisdiction may be conferred by this Constitution or other law on some other court, tribunal or administrative body.*

Tex. Const. art. V, § 8 (emphasis added). The district court held that it lacked jurisdiction because the legislature had conferred jurisdiction over matters concerning the administration of the State Bar upon this Court in the State Bar Act. *See* Tex.Gov't Code Ann. § 81.011(c) (West 1988). I disagree.

What the legislature conferred upon this Court was "*administrative control*" over the state bar." Tex.Gov't Code Ann. § 81.011(c) (West 1988) (emphasis added). "Jurisdiction" within the meaning of Article V, Section 8 includes only the *judicial* powers of the courts. These judicial powers are typically the only ones at issue when the Court

makes statements such as: "[J]udicial power is divided among the various named courts by means of express grants of 'jurisdiction.' " *Eichelberger v. Eichelberger,* 582 S.W.2d 395, 398 (Tex.1979) (citing *Morrow v. Corbin,* 122 Tex. 553, 62 S.W.2d 641 (1933)). But Texas courts have duties in addition to their judicial responsibilities.

I do not disagree that this Court's inherent power to regulate the practice of law is more expansive than the administrative authority that the legislature has "granted" to us. *See Daves v. State Bar,* 691 S.W.2d 784 (Tex.App.—Amarillo 1985, writ ref'd n.r.e.) (noting the Court's inherent power to adopt rules governing the practice of law by extra-statutory means); *see also* Tex.Gov't Code Ann. § 81.011(b) (West 1988) (stating that the State Bar was a legislative creation passed to *aid* the Court in exercising its judicial power). *See State Bar v. Heard,* 603 S.W.2d 829, 831 (Tex.1980). Even so, it does not necessarily follow that this inherent power is so great that it deprives the state's courts of general jurisdiction of the authority to hear a challenge pertaining to the governance of the legal profession.

The proper question to determine whether the district court has jurisdiction over this case is not whether this Court, in its administrative capacity, *could* act in a manner that would decide or moot the issues raised. Rather, three questions must be asked: (1) **\*249** whether the State Bar and its officers are the proper parties in this case; (2) if so, whether the district court is an appropriate forum to hear a matter over which this Court exercises such extensive authority; and (3) whether the failure to act, as opposed to an affirmative action, nevertheless presents an issue over which the district court may exercise authority. I would answer all three questions in the affirmative.

However couched, the Plaintiffs' claims are actually directed not so much at the State Bar [1] as at an alleged deficiency in the current system of lawyer regulation established by this Court and the legislature. This Court, both by legislative grant and its inherent powers, possesses authority to regulate the practice of law and exercises control over the State Bar. *See* Tex.Gov't Code Ann. §§ 81.011, 81.024(a) (West 1988) (clarifying this Court's supervisory role over the State Bar); *State Bar v. Heard,* 603 S.W.2d at 831 ("The State Bar Act was passed in aid of this court's exercise of its inherent power to regulate the practice of law.") (footnotes omitted). The legislature recognized the Court's fundamental responsibility in this area when it passed the State Bar Act "in aid of the judicial department's powers under the constitution

to regulate the practice of law." Tex.Gov't Code Ann. § 81.011(b) (West 1988).

The State Bar's actual power in this regard is limited to proposing regulations to this Court, which could reject or amend any such recommendation. Under a strict concept of justiciability, one could argue that there is no justiciable controversy between the State Bar and the Plaintiffs. *See Board of Water Eng'rs v. City of San Antonio,* 155 Tex. 111, 283 S.W.2d 722, 724 (1955) (defining "justiciable controversy" as the requirement that there shall be a real controversy between the parties that will actually be determined by the judicial declaration sought). On the other hand, more modern notions of justiciability would acknowledge that the State Bar is an acceptable "surrogate defendant" for the Court in this matter. In fact, the State Bar has served as such a surrogate in several recent cases. *See, e.g., O'Quinn v. State Bar,* 763 S.W.2d 397 (Tex.1988); *State Bar v. Tinning,* 875 S.W.2d 403 (Tex.App.—Corpus Christi 1994, writ denied); *Musslewhite v. State Bar,* 786 S.W.2d 437 (Tex.App.—Houston [14th Dist.] 1990, writ denied); *Daves v. State Bar,* 691 S.W.2d 784 (Tex.App.—Amarillo 1985, writ ref'd n.r.e.). [2] For these reasons, I conclude that the district court's jurisdiction is not suspect on this basis.

## II.

Next we must decide whether the district court has subject matter jurisdiction over a challenge to an administrative decision of this Court. I believe the answer is yes. Promulgating court rules in our administrative capacity does not and cannot imply a concomitant determination by this Court in its judicial capacity that such rules are constitutional in every respect. Hopefully, this Court does not abandon its collective knowledge of the Constitution when it exercises its rulemaking authority, and surely it would not knowingly promulgate any rule it regarded as violating the United States or Texas Constitutions. However, we are not omniscient. It is simply beyond the capacity of this or **\*250** any other court to envision every possible constitutional ramification or factual application of its orders or rules, particularly before it has the benefit of a case and controversy that vigorously explores both sides of the issues. *See* Order of the Supreme Court of February 28, 1966, Transmitting Amendments to Rules of Civil Procedure, 383 U.S. 1029, 1032 (Black, J., dissenting) (stating that "the Court's transmittal does not carry with it a decision that the amended rules are all constitutional" because "such a decision would be the equivalent of an advisory

opinion which, I assume the Court would unanimously agree, we are without constitutional power to give."); *Grand Bahama Petroleum Co. v. Canadian Transp. Agencies,* 450 F.Supp. 447, 450 (W.D.Wash.1978) (holding that the district court had jurisdiction to consider a constitutional challenge to a federal rule of civil procedure, noting that "[w]hile the [United States Supreme] Court certainly considers the constitutionality of a rule recommended by a committee, it is not possible for its members to anticipate every constitutional objection."). This is especially true when, as here, it is the *failure* to provide for some constitutionally mandated system that is alleged.

Nor would the mere determination by the district court that the current system is constitutionally deficient invade this Court's inherent power to regulate the practice of law. We have no inherent power to create a system that violates the Constitution, just as the legislature has no power to pass unconstitutional statutes. *See Reese v. State,* 772 S.W.2d 288, 290 (Tex.App.—Waco 1989, pet. ref'd) (reasoning that a court may not enact a procedural rule that conflicts with a provision of the constitution); *Picard v. State,* 631 S.W.2d 761, 763 (Tex.App.—Beaumont 1981, no writ) (holding that the rule-making authority of any court may not conflict with constitutional provisions and that any unconstitutional rule is inoperative). For example, the Constitution provides that this Court may not appoint to the State Commission on Judicial Conduct more than one judge from the same Supreme Judicial District. Tex. Const. art. V, § 1–a(2). If the Court breached this restriction, surely it would be answerable to the legal system. If this be conceded, there can be only two possible mechanisms to enforce constitutional restrictions on the Court acting in its administrative capacity: a suit against the Court in a lower court or an original proceeding in the Court itself. Either of these courses is permissible, but at least one is necessary. Under the Court's analysis, however, there is no mechanism to enforce constitutional restrictions on the Court acting in its administrative capacity. In this case, the Plaintiffs are left without a meaningful forum in which to seek redress of their grievances. The Court has directed "that this matter be placed on the Court's administrative agenda for further consideration." In essence, the Court suggests that the Plaintiffs directly petition the Court for redress of their "complaint." However, the Court is not required to consider or take any action on the "petition"—ever! Obviously this does not constitute a meaningful forum. [3] It is also unclear whether the Plaintiffs could seek redress of their grievances in the Legislature. Based upon the Court's expansive description of its inherent powers to regulate the practice of law, it

is doubtful that the Legislature has the power to impose a mandatory pro bono system upon the State Bar.

Some state supreme courts have expressly provided for the filing of petitions challenging their orders and rules directly with that court. *See, e.g., Aldridge v. Watling Ladder Co.,* 275 Ark. 225, 628 S.W.2d 322, 323 (1982) (holding that a case involving construction of supreme court rule should have been certified to supreme court under Supreme Court Rule 29(1)(c)); **\*251** *Goetz v. Harrison,* 153 Mont. 403, 457 P.2d 911, 912 (1969) (stating that questions involving the constitutionality of a supreme court rule should be presented to the supreme court in an "appropriate original proceeding.")

This Court has, with narrow exceptions, never provided such a procedure. [4] Because supreme court rules must comport with the Constitution and because the judicial branch is entrusted with interpreting the Constitution, jurisdiction to consider challenges to rules must exist at the district court level. This view comports with the general understanding of Texas law, and with what is probably the majority rule in most of the states that have been confronted with the issue. *See, e.g., Beard v. North Carolina State Bar,* 320 N.C. 126, 357 S.E.2d 694, 695 (1987) (holding that a "direct challenge of the constitutionality of an order of this Court ... must be litigated as an original action in the General Court of Justice."); *Berberian v. Kane,* 425 A.2d 527, 528 n. 2 (R.I.1981) (holding that a rule may be challenged in a case seeking declaratory judgment that the rule was unconstitutional).

### III.

The question remains whether this case is nonjusticiable because the district court does not have jurisdiction to grant the relief sought. Plaintiffs seek a declaratory judgment that the State Bar is violating their constitutional and statutory rights. Among other things, Plaintiffs requested that the district court "[d]eclare that the official policies, actions, and failure to act alleged herein, which involve the refusal to Defendants to adequately provide for the legal services needed by Plaintiffs and the class, violate the Texas Constitution and Tex.Civ.Prac. & Rem.Code § 106.001." Plaintiffs also seek an injunction prohibiting the State Bar from continuing to violate the rights of indigent citizens and an injunction mandating the State Bar to implement an adequate and more effective pro bono program. First, declaratory relief is proper whether or not further relief is or could be claimed. *See* Tex.Civ.Prac. & Rem.Code Ann.

§ 37.003(a). The district court has the authority to render a judgment declaring the constitutional and statutory rights of Plaintiffs and, also, to declare whether such rights have been violated. See Tex.Civ.Prac. & Rem.Code Ann. § 37.003. I fail to see the distinction between the district court's jurisdiction to determine the constitutionality of the official policies, actions, and failure to act caused by the refusal of the State Bar to adequately provide for the legal services needed by Plaintiffs *and* the district court's jurisdiction to determine the constitutionality of rules proposed by the State Bar and promulgated by this Court. In both cases, the district court's determination could be reviewed by this Court in its adjudicative capacity. Contrary to the Court's assertion, the determination of the constitutionality of the refusal to the State Bar to adequately provide for the legal services needed by Plaintiffs would not cast the district court in the role of effectively promulgating policies and regulations governing Texas lawyers.

Concerning injunctive relief, a prohibitory injunction, one prohibiting the State Bar from continuing to violate Plaintiffs' rights, would be proper in the event the district court holds such rights are being violated. It is axiomatic that a court has the power to enforce its orders determining the legal rights of the parties. *Morrow v. Corbin,* 122 Tex. 553, 62 S.W.2d 641, 644–45 (1933). "Reason and experience argue that courts empowered ... [to decide] constitutional mandates cannot be left without the means to order appropriate relief." *Terrazas v. Ramirez,* 829 S.W.2d 712, 718 (Tex.1991). Furthermore, a mandatory injunction could also be proper. *See Edgewood Indep. Sch. Dist. v. Kirby,* 777 S.W.2d 391, 399 (Tex.1989); *Edgewood Indep. Sch. Dist. v. Kirby,* 804 S.W.2d 491, 494 (Tex.1991); *Terrazas,* 829 S.W.2d at 717–20. However, courts should tread lightly when dealing with powers traditionally reserved to other areas of government. For example, in *Terrazas,* although we held that the courts could order apportionment, we were careful to state,

> **\*252** [T]hat power ought to be used only after investigation and careful consideration of the many, diverse interests affected, after due deference to the Legislature to rectify its own statutes, and after due regard for the effect of the court's order on the election process.

829 S.W.2d at 718. Likewise, in *Edgewood Indep. Sch. Dist. v. Kirby,* 777 S.W.2d at 399, we stated, "Although we have ruled the school financing system to be unconstitutional, we

do not now instruct the legislature as to the specifics of the legislation it should enact...."

Moreover, a court should not overstep the line between adjudication and regulation. Regulation of the practice of law is within the exclusive control of this Court. Tex.Gov't Code Ann. § 81.011(c) (Vernon 1986); *Daves v. State Bar,* 691 S.W.2d 784, 788–89 (Tex.App.—Amarillo 1985, writ ref'd n.r.e.). An injunction mandating this Court or the State Bar to implement a mandatory pro bono program would be improper. It would inappropriately involve the district court in the regulation of the practice of law. *See Edgewood Indep. Sch. Dist. v. Kirby,* 777 S.W.2d at 399; *Edgewood Indep. Sch. Dist. v. Kirby,* 804 S.W.2d at 493–94. The district court does, however, have jurisdiction to issue a mandatory injunction which requires the State Bar to propose and implement a more effective voluntary pro bono program calculated to meet constitutional and statutory demands which may exist. *Id.* In addition, the district court would have jurisdiction to issue a mandatory injunction which requires the State Bar to propose regulations creating a mandatory pro bono program to this Court.

Finally the question remains whether this case is nonjusticiable because it alleges constitutional sins of omission. I believe that the Plaintiffs' complaint that the State Bar has failed to act as required by various constitutional and statutory provisions does not affect the justiciability of their claims. Distinctions between an act and an omission in this context are not helpful. *See generally* Lisa E. Heinzerling, Note, *Actionable Inaction: Section 1983 Liability for Failure to Act,* 53 U.CHI.L.REV. 1048, 1057–63 (1986) (criticizing the entire act/omission analysis in the context of governmental responsibilities under the Constitution, primarily because its tort-based reasoning is ill-suited to explain existing doctrine). If this Court concluded that the district court lacked jurisdiction over the Plaintiffs' claims because they allege an omission rather than an act, the Plaintiffs could simply recast their allegations. Thus, the difference between acts and omissions in this highly unusual context seems semantic. *See* David A. Fischer, *Causation in Fact in Omission Cases,* 1992 UTAH L.REV. 1335, 1339 ("[A]s a matter of semantics, any omission can be characterized as part of a larger encompassing act."). The mere fact that the Plaintiffs have alleged an unconstitutional omission cannot deprive the district court of jurisdiction when it clearly would have jurisdiction to review an unconstitutional act.

For the foregoing reasons, I respectfully dissent.

**Parallel Citations**

38 Tex. Sup. Ct. J. 140

Footnotes

1   This disposition of the limited issue before us means that we do not, as Justice Gonzalez's concurring opinion does, comment on the merits of the underlying claims.

2   TEX.CIV.PRAC. & REM.CODE § 106.001. This statute generally prohibits the state or its agents from discriminating against persons because of race, religion, color, sex, or national origin. Remedies available to a successful litigant include injunctive relief, attorney's fees, and court costs. *Id.* § 106.002. A person who knowingly violates this statute is subject to a fine and confinement in the county jail. *Id.* § 106.003.

3   TEX.DISCIPLINARY R.PROF.CONDUCT, pmbl. ¶ 6, *reprinted in* TEX.GOV'T CODE, tit. 2, subtit. G app. (West Supp.1992) (STATE BAR RULES art. X, § 9) ("The provision of free legal services to those unable to pay reasonable fees is a moral obligation of each lawyer as well as the profession generally.").

4   Texas Lawyer's Creed—A Mandate for Professionalism (adopted by the Supreme Court of Texas and the Court of Criminal Appeals of Texas, Nov. 7, 1989), *reprinted in* TEXAS RULES OF COURT 487 (West 1994). In the Creed, lawyers are urged to commit themselves "to an adequate and effective pro bono program." *Id.*

5   Section 8 defines the district courts' jurisdiction, but excepts those cases where jurisdiction has been conferred on some other court. *See* TEX. CONST. art. V, § 8. The district court held that this Court's power to regulate the practice of law was sufficient to bring this case within Section 8's exception.

1   Respondents deny that they are seeking a mandatory pro bono program, but they do not suggest any other method of providing legal services to the indigent.

2   The IOLTA foundation administers a program wherein lawyers convert their non-interest bearing trust accounts to interest bearing accounts. Financial institutions remit all interest earned on IOLTA accounts to the IOLTA foundation. The foundation in turn channels money to organizations that deliver civil legal services to the poor. Since inception of the mandatory IOLTA program, the foundation has distributed approximately $42 million to assist people unable to afford an attorney in civil actions.

1   The current pro bono policy was adopted by the State Bar of Texas Board of Directors in May 1992. The policy includes an aspirational goal of fifty (50) hours per year and an annual voluntary pro bono reporting system.

2   We need not decide in this case whether Plaintiffs could have proceeded against this Court itself. Like other state courts of last resort, we have been named defendants in district court at least once before. *Cameron v. Greenhill,* 582 S.W.2d 775 (Tex.1979); *see also CWA Local 1044 v. Chief Justice of the Sup. Ct.,* 118 N.J. 495, 572 A.2d 613 (1990) (challenging a New Jersey Supreme Court decision made in the course of labor negotiations with its judicial employees); *American Trial Lawyers Ass'n v. New Jersey Sup. Ct.,* 66 N.J. 258, 330 A.2d 350 (1974) (challenging a New Jersey Supreme Court order limiting contingent attorney's fees in certain tort cases); *Vermont Sup. Ct. Admin. Directive No. 17 v. Vermont Sup. Ct.,* 154 Vt. 217, 576 A.2d 127 (1990) (challenging a Vermont Supreme Court order postponing civil jury trials due to budgetary shortfalls). But some jurisdictions expressly proscribe suing the state's highest court. *See, e.g., Goetz v. Harrison,* 153 Mont. 403, 457 P.2d 911 (1969) (holding that a lower court has no supervisory control over the Supreme Court and thus cannot entertain a challenge to a Supreme Court rule relating to bar admissions).

3   It is unclear whether the Court is creating a "parallel administrative docket" in which interested persons could petition the Court for various forms of relief. Are these "petitioners" entitled to timely consideration of their petition and oral argument? *See Barger v. Brock,* 535 S.W.2d 337, 342 (Tenn.1976) ("[I]n order that the parties may have their insistences considered, we direct that all pleadings in this cause be delivered to the Clerk of this Court at Nashville forthwith. This Court will treat the pleadings as constituting a motion to vacate or modify Rule 42. This matter will be docketed for oral argument, in Knoxville, at the heel of the calendar on 7 May 1976. Briefs will be filed with the Clerk in Nashville by 23 April 1976. The sole issue before the Court is the constitutionality of Rule 42.").

4   Our lack of an original proceeding may actually be salutary. This Court's resolution of complex questions concerning the constitutionality of our rules would most likely be enhanced by the fuller development of issues and arguments that usually attend the appellate process.

---

**End of Document**                                                          © 2015 Thomson Reuters. No claim to original U.S. Government Works.

 Original Image of 942 S.W.2d 575 (PDF)

942 S.W.2d 575
Supreme Court of Texas.

The STATE BAR OF TEXAS, Relator,
v.
The Honorable Dwight JEFFERSON, Respondent.

No. 97–0276.　|　April 2, 1997.

State bar petitioned for writs of mandamus and prohibition directing district court not to interfere in pending attorney grievance proceedings. Supreme Court, held that: (1) district court had no authority to issue temporary restraining order (TRO) enjoining attorney discipline proceedings; (2) district court had jurisdiction to address attorneys' claims to the extent resolution of issues did not interfere with specific grievance proceeding; and (3) mandamus was unavailable to unseal papers in district court action.

Leave to file petition granted; partial relief conditionally granted.

**Attorneys and Law Firms**

**\*575** Steven Wayne Young, Linda A. Acevedo, Austin, Cathleen C. Herasimchuk, Rusty Hardin, Houston, Lonny Morrison, Wichita Falls, Broadus A. Spivey, Austin, for relator.

Thomas R. McDade, Houston, Luther H. Soules, III, Brad L. Sklencar, Robinson C. Ramsey, San Antonio, T. Gerald Treece, Richard P. Keeton, James R. Leahy, Houston, for respondent.

**Opinion**

PER CURIAM.

In this original proceeding, the State Bar of Texas petitions for writs of mandamus and prohibition to direct the district court not to interfere in pending attorney grievance proceedings. Two of the four lawyers subject to grievance proceedings in State Bar File No. HO119614117 successfully petitioned the district court to issue a temporary restraining order staying proceedings before an investigatory panel of the District 4–C Disciplinary Committee and preserving the jurisdiction of that panel. The two lawyers complain of numerous irregularities in the conduct of the proceeding,

including the State Bar's use of special assistant disciplinary counsel to prosecute the case, the investigatory panel's refusal to attempt to negotiate a sanction with the lawyers, the panel's failure to make findings specifying what rules of professional conduct were violated, and the Bar's alleged dissemination of confidential information concerning this case. The two lawyers have made the same complaints in an original proceeding in this Court, *In re Hearing before a Panel of the* District 4–C Disciplinary Committee, No. 97–0243 (Tex. filed March 18, 1997). Proceedings in the district court have been sealed under Rule 76a(5), TEX.R.CIV.P.

**[1]** In *Board of Disciplinary Appeals v. McFall,* 888 S.W.2d 471 (Tex.1994), we issued writs of mandamus and prohibition to prevent a district court's enjoining the Board of Disciplinary Appeals from revoking an attorney's **\*576** probation and suspending him from practice. We held:

A writ of mandamus and writ of prohibition are appropriate when a district court issues an order beyond its jurisdiction. *Crouch v. Craik,* 369 S.W.2d 311, 314 (Tex.1963). The district court lacked jurisdiction under the Rules of Disciplinary Procedure to enjoin Smith's suspension. Section 81.071 of the Texas Government Code provides that each attorney practicing in Texas is "subject to the disciplinary and disability jurisdiction of the supreme court and the Commission for Lawyer Discipline, a committee of the state bar." Pursuant to this authority, this court has established a comprehensive system of lawyer discipline governed by the Rules of Disciplinary Procedure.

The rules provide for appeals directly to this Court. TEX.R.DISCIPLINARY P. 7.11. If the appeal is unsuccessful, Smith may seek reinstatement in district court, with a jury trial if he desires one. TEX.R.DISCIPLINARY P. 12.06. The rules do not, however, provide for interim equitable relief, and the district court did not have the power to enjoin Smith's suspension.

In *State v. Sewell,* 487 S.W.2d 716 (Tex.1972), we granted mandamus to vacate an injunction barring Grievance Committee proceedings, holding that an injunction by a district court "is an interference with the grievance procedures authorized by ... the State Bar Act and constitutes a clear abuse of discretion." *Id. at 719.* We did not even reach the question of whether an adequate remedy at law existed because the case was one "affecting the state as a whole and in which the orderly processes

of government have been disturbed." *Id.* (quoting *State v. Ferguson,* 133 Tex. 60, 125 S.W.2d 272, 274 (1939)).

*Id.* at 472–473.

The two lawyers in this case contend that, unlike the lawyer in *McFall* who had other remedies besides an injunction —namely, an appeal and an action for reinstatement—they have no other recourse for redress of their complaints. That contention simply overlooks the fact that the two lawyers in this case have requested the same relief from this Court in another proceeding, No. 97–0243. Given that avenue of review, there is no more authority for the district court to grant injunctive relief in this case than there was in *McFall.* The Bar is therefore entitled to the same relief granted in *McFall.*

 **[2]** The Bar also requests that the district court be directed to dismiss the action for lack of subject matter jurisdiction, or alternatively, to proceed no further in the case. The two lawyers raise a number of complaints in the case, including the contention that the Texas Rules of Disciplinary Procedure are unconstitutional. To the extent that resolution of these issues does not interfere with a specific grievance proceeding, the district court has jurisdiction to address them. *See State Bar of Texas v. Gomez,* 891 S.W.2d 243, 245 (Tex.1994). We therefore decline to grant such broad relief.

 **[3]** Finally, the Bar requests that all papers filed in the district court case be unsealed. The district court ordered the papers temporarily sealed under Rule 76a(5), TEX.R.CIV.P. The order provides for further proceedings as required by Rule 76a. The Bar may yet obtain from the district court the relief it seeks, and if it does not, it may appeal under Rule 76a(8). Mandamus is therefore unavailable.

Accordingly, we grant leave to file the petition for writs of mandamus and prohibition and without hearing oral argument conditionally grant partial relief. We direct the district court to vacate immediately its temporary restraining order issued March 19, 1997, and to directly interfere no further in the proceedings in State Bar File No. HO119614117. We deny all further relief. We are confident that the district court will comply without delay. Writs will issue only if it does not.

**Parallel Citations**

40 Tex. Sup. Ct. J. 463, 41 Tex. Sup. Ct. J. 717

**End of Document**

© 2015 Thomson Reuters. No claim to original U.S. Government Works.

[PDF] Original Image of 487 S.W.2d 716 (PDF)

487 S.W.2d 716
Supreme Court of Texas.

The STATE of Texas et al., Relators,

v.

James C. SEWELL, Judge, Respondent.

No. B—3685. | Nov. 29, 1972.

The Grievance Committee of the Bar Association brought action for writ of mandamus commanding vacation of order of the 13th Judicial District Court enjoining the Committee from conducting hearing on matters considered by Committee at earlier hearings. The Supreme Court, Pope, J., held that where Grievance Committee's decisions at prior hearings upon two complaints were not final determinations of merits of complaints, injunction preventing Grievance Committee from conducting a hearing on matters which were considered by Committee at two earlier hearings was an interference with the grievance procedures authorized by the State Bar Act and granting thereof constituted a clear abuse of discretion.

Injunction vacated.

**Attorneys and Law Firms**

**\*717** Davis Grant, Gen. Counsel, State Bar of Texas, Austin, for relator.

Beard & Kultgen, Pat Beard, Waco, Charles B. McGregor, Houston, Reynolds, White, Allen & Cook, Joe H. Reynolds, Houston, for respondent.

**Opinion**

POPE, Justice.

The members of the Grievance Committee District No. 6, State Bar of Texas, acting in their official and individual capacities, ask that this court issue its writ of mandamus commanding the Honorable James C. Sewell, Judge of the 13th Judicial District Court of Navarro County, to vacate an order which temporarily enjoins the Grievance Committee from conducting 'A hearing on matters before the Committee' which were considered by the Committee at two earlier hearings. It is our opinion that the injunctive decree should be vacated.

Most of the relevant facts are included in the recitals of the injunctive order which is under attack. Frank B. McGregor is a practicing attorney in Hillsboro and is the District Attorney Elect for the 66th Judicial District. The Grievance Committee in late November, 1971, gave written notice to McGregor of a hearing set for December 9, 1971, concerning complaints of his alleged mishandling of funds during the time that he had previously served as District Attorney. At the December 9 meeting the Grievance Committee determined to file a formal complaint seeking McGregor's disbarment. That suit was filed on March 1, 1972, in the District Court of Hill County.

The Grievance Committee later gave notice to McGregor of a hearing on May 30, 1972, concerning an additional complaint arising out of his representation of a client in a court case in Hill County. After conducting that hearing, the Grievance Committee decided that it did not then have sufficient basis upon which to institute any disciplinary action.

On June 2, 1972, McGregor sought a temporary injunction in the disbarment suit pending in Hill County seeking to enjoin the Grievance Committee from pursuing any further investigation procedures following the institution of the disbarment suit. McGregor urged that, upon the filing of the disbarment suit, discovery procedures were then governed by the usual Rules of Civil Procedure, Article XII, State Bar Rules, 1A Vern.Tex.Civ.Stats., p. 221. He alleged that the Committee was exercising its inquisitorial powers after suit was filed. The trial court denied McGregor's prayer for injunction, but the court of civil appeals reversed that order and directed the trial court to enjoin the Grievance Committee from holding any further hearings or making any further investigation without complying with the Rules of Civil Procedure. McGregor v. State, 483 S.W.2d 559 (Tex.Civ.App., writ pending).

On November 1, 1972, the Grievance Committee took a non-suit on the disbarment case in Hill County. Its alleged purpose in doing so was to begin anew and to satisfy strictly the objections which McGregor had lodged to the procedures leading to the institution of that suit. The order for non-suit was without prejudice to the rights of the Committee to refile the disbarment suit.

On November 1, 1972, the day the Grievance Committee took its non-suit in the Hill County disbarment suit, Steve Latham, the Judge of the 66th Judicial District, lodged a new complaint with the Grievance Committee, and the Committee set a hearing date for November 16, 1972, and

so notified McGregor. McGregor then filed a petition for injunction in the 13th Judicial District in a neighboring county. The respondent, Judge James Sewell, first granted a restraining order without notice and **\*718** then upon hearing on November 13, 1972, temporarily enjoined the Grievance Committee from conducting any hearing which would reconsider any of the matters which were before the Committee at its hearing either on December 9, 1971, or May 31, 1972. The order excepted from the injunction two complaints which appeared to be entirely new and which were not previously considered by the Committee. It is this injunction order which is now before us.

Judge Sewell states the basis for his injunctive decree by recitals in the decree. It says that the Grievance Committee was barred by res judicata since it had already met and reached a decision at its December 9, 1971, meeting to institute a disbarment suit and it had also met and decided on May 30, 1972, that it would not institute any disciplinary action grounded upon the other complaint.

 **[1]**     **[2]**     **[3]**     The order dismissing the formal complaint to disbar McGregor was without prejudice to the Committee's right to refile the suit. Such an order is not a bar to the institution of the same suit. The Grievance Committee asserts that there are other evidences of misconduct which need investigation, but the breadth of the injunctive order is such that even the calling of a meeting may subject the members to contempt procedures. It says there is an urgent need to discover and preserve documentary evidence which otherwise may be lost. The Grievance Committee's prior investigations and its decision to take disciplinary action or to forego such action have been inquisitorial in nature, but they have not been decisions upon the merits of the complaints. The preliminary investigation of an attorney for alleged misconduct has been compared to an inquisition by a grand jury. Karlin v. Culkin, 248 N.Y. 465, 162 N.E. 487, 60 A.L.R. 851, 859 (1928). Surely the further investigation of other misconduct would not be barred by the prior hearings by the Grievance Committee. The Committee's prior decisions did not ever rise to the level of a final determination of the merits of the complaints before them, and they are not res judicata.

 **[4]**     **[5]**     Relief, ordinarily, by way of the writ of mandamus is granted with respect to orders which are void and for which there is no ordinary adequate remedy such as an appeal. Fulton v. Finch, 162 Tex. 351, 346 S.W.2d 823 (1961). The writ may, however, be granted in some instances when there has been a gross abuse of discretion. In Lutheran Social Service, Inc. v. Meyers, 460 S.W.2d 887 (Tex.1970), we said

that one who seeks an original mandamus to command a trial court to vacate an order has a heavy burden. He must establish that the issuance of the questioned order was a clear abuse of discretion. In Crane v. Tunks, 160 Tex. 182, 328 S.W.2d 434 (1959), we also wrote:

> While it is the general rule that a mandamus will not issue to control the action of an inferior court . . . in a matter involving discretion, the writ may issue in a proper case to correct a clear abuse of discretion. Southern Bag & Burlap Co. v. Boyd, supra; (120 Tex. 418, 38 S.W.2d 565 (1931)) Womack v. Berry, 156 Tex. 44, 291 S.W.2d 677, 682 (1956).

In measuring the abuse of discretion, this court has looked with disfavor upon injunctive encroachments upon delegated administrative and executive powers which affect the state as a whole. In State v. Ferguson, 133 Tex. 60, 125 S.W.2d 272, 274 (1939), the members of The Public Safety Commission of Texas asked for a writ of mandamus commanding a trial judge to set aside a temporary restraining order which interfered with the peace officers of Texas in the enforcement of certain provisions of the penal code. The court acknowledged that an adequate remedy in another court ordinarily is sufficient reason for the denial of a writ of mandamus. Smith v. Conner, 98 Tex. 434, 84 S.W. 815 (1905); Aycock v. Clark, 94 Tex. 375, 60 S.W. 665 (1901). The court went **\*719** on to say, however, that the rule 'will not be followed in a case affecting the state as a whole and in which the orderly processes of government have been disturbed.' The court then declared that the state's peace officers could proceed in the discharge of their official duties freed of the restraints of the writs issued by trial judges.

 **[6]**     Ours is a society which lives under law, and lawyers, as well as the courts, are its chief protectors. This court is charged with the duty of making rules and regulations for disciplining, suspending, and disbarring attorneys after appropriate investigation and trial. Section 4, Article 320a —1. This distasteful task is the work of the Grievance Committee, and restraints against the performance of its functions run afoul the purposes of Article XII, State Bar Rules, 1A Vern.Tex.Civ.Stats. The Grievance Committee is an administrative agency of the judicial department and is the arm of the Supreme Court in the discharge of its professional policing duties. In a different context, but concerning the frustration of the functions of administrative agencies, we

said in Texas State Board of Examiners in Optometry v. Carp, 162 Tex. 1, 343 S.W.2d 242 (1961): '(a) board or commission created by the Legislature with authority and responsibility for determining in the first instance whether certain action shall be taken is not subject to restraint by the courts whenever it appears that an erroneous conclusion has been reached on some preliminary or procedural question. Any other rule would afford an opportunity for constant delays in the course of administrative proceedings, and there is no real need for equitable relief in the ordinary case until a final administrative determination has been made.' See also Texas Aeronautics Commission v. Betts, 469 S.W.2d 394, 398 (Tex.1971).

 **[7]**    The injunction granted by the judge of the 13th Judicial District is an interference with the grievance procedures authorized by Article XII of the State Bar Act and constitutes a clear abuse of discretion. The injunction decree granted on November 13, 1972, in cause 383—72, styled Frank B. McGregor v. Gladney, et al., is vacated. No motion for rehearing will be allowed.

**End of Document**    © 2015 Thomson Reuters. No claim to original U.S. Government Works.

Vernon's Texas Statutes and Codes Annotated
  Government Code (Refs & Annos)
    Title 2. Judicial Branch (Refs & Annos)
      Subtitle G. Attorneys
        Title 2, Subtitle G--Appendix
          a-1. Rules of Disciplinary Procedure (Refs & Annos)
            Part I. General Rules

V.T.C.A., Govt. Code T. 2, Subt. G App. A-1, Disc. Proc., 1.06

1.06. Definitions

Currentness

A. "Address" means the registered address provided by the attorney who is the subject of the Grievance, as that address is shown on the membership rolls maintained by the State Bar on behalf of the Clerk of the Supreme Court at the time of receipt of the Grievance by the Chief Disciplinary Counsel.

B. "Board" means the Board of Directors of the State Bar of Texas.

C. "Chief Disciplinary Counsel" means the person serving as Chief Disciplinary Counsel and any and all of his or her assistants.

D. "Commission" means the Commission for Lawyer Discipline, a permanent committee of the State Bar of Texas.

E. "Committee" means any of the grievance committees within a single District.

F. "Complainant" means the person, firm, corporation, or other entity, including the Chief Disciplinary Counsel, initiating a Complaint or Inquiry.

G. "Complaint" means those written matters received by the Office of the Chief Disciplinary Counsel that, either on the face thereof or upon screening or preliminary investigation, allege Professional Misconduct or attorney Disability, or both, cognizable under these rules or the Texas Disciplinary Rules of Professional Conduct.

H. "Director" means a member of the Board of Directors of the State Bar of Texas.

I. "Disability" means any physical, mental, or emotional condition that, with or without a substantive rule violation, results in the attorney's inability to practice law, provide client services, complete contracts of employment, or otherwise carry out his or her professional responsibilities to clients, courts, the profession, or the public.

J. "Disciplinary Action" means a proceeding brought by or against an attorney in a district court or any judicial proceeding covered by these rules other than an Evidentiary Hearing.

K. "Disciplinary Petition" means a pleading that satisfies the requirements of Rule 3.01.

L. "Disciplinary Proceedings" includes the processing of a Grievance, the investigation and processing of an Inquiry or Complaint, presentation of a Complaint before a Summary Disposition Panel, and the proceeding before an Evidentiary Panel.

M. "District" means disciplinary district.

N. "Evidentiary Hearing" means an adjudicatory proceeding before a panel of a grievance committee.

O. "Evidentiary Panel" means a panel of the District Grievance Committee performing an adjudicatory function other than that of a Summary Disposition Panel with regard to a Disciplinary Proceeding pending before the District Grievance Committee of which the Evidentiary Panel is a subcommittee.

P. "Evidentiary Petition" means a pleading that satisfies the requirements of Rule 2.17.

Q. "General Counsel" means the General Counsel of the State Bar of Texas and any and all of his or her assistants.

R. "Grievance" means a written statement, from whatever source, apparently intended to allege Professional Misconduct by a lawyer, or lawyer Disability, or both, received by the Office of the Chief Disciplinary Counsel.

S. "Inquiry" means any written matter concerning attorney conduct received by the Office of the Chief Disciplinary Counsel that, even if true, does not allege Professional Misconduct or Disability.

T. "Intentional Crime" means (1) any Serious Crime that requires proof of knowledge or intent as an essential element or (2) any crime involving misapplication of money or other property held as a fiduciary.

U. "Just Cause" means such cause as is found to exist upon a reasonable inquiry that would induce a reasonably intelligent and prudent person to believe that an attorney either has committed an act or acts of Professional Misconduct requiring that a Sanction be imposed, or suffers from a Disability that requires either suspension as an attorney licensed to practice law in the State of Texas or probation.

V. "Penal Institution" has the meaning assigned by Article 62.001, Code of Criminal Procedure.

W. "Professional Misconduct" includes:

   1. Acts or omissions by an attorney, individually or in concert with another person or persons, that violate one or more of the Texas Disciplinary Rules of Professional Conduct.

2. Attorney conduct that occurs in another state or in the District of Columbia and results in the disciplining of an attorney in that other jurisdiction, if the conduct is Professional Misconduct under the Texas Disciplinary Rules of Professional Conduct.

3. Violation of any disciplinary or disability order or judgment.

4. Engaging in conduct that constitutes barratry as defined by the law of this state.

5. Failure to comply with Rule 13.01 of these rules relating to notification of an attorney's cessation of practice.

6. Engaging in the practice of law either during a period of suspension or when on inactive status.

7. Conviction of a Serious Crime, or being placed on probation for a Serious Crime with or without an adjudication of guilt.

8. Conviction of an Intentional Crime, or being placed on probation for an Intentional Crime with or without an adjudication of guilt.

X. "Reasonable Attorneys' Fees," for purposes of these rules only, means a reasonable fee for a competent private attorney, under the circumstances. Relevant factors that may be considered in determining the reasonableness of a fee include but are not limited to the following:

1. The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

2. The fee customarily charged in the locality for similar legal services;

3. The amount involved and the results obtained;

4. The time limitations imposed by the circumstances; and

5. The experience, reputation, and ability of the lawyer or lawyers performing the services.

Y. "Respondent" means any attorney who is the subject of a Grievance, Complaint, Disciplinary Proceeding, or Disciplinary Action.

Z. "Sanction" means any of the following:

1. Disbarment.

2. Resignation in lieu of discipline.

3. Indefinite Disability Suspension.

4. Suspension for a term certain.

5. Probation of suspension, which probation may be concurrent with the period of suspension, upon such reasonable terms as are appropriate under the circumstances.

6. Interim suspension.

7. Public reprimand.

8. Private reprimand.

The term "Sanction" may include the following additional ancillary requirements.

a. Restitution (which may include repayment to the Client Security Fund of the State Bar of any payments made by reason of Respondent's Professional Misconduct); and

b. Payment of Reasonable Attorneys' Fees and all direct expenses associated with the proceedings.

AA. "Serious Crime" means barratry; and felony involving moral turpitude; any misdemeanor involving theft, embezzlement, or fraudulent or reckless misappropriation of money or other property; or any attempt, conspiracy, or solicitation of another to commit any of the foregoing crimes.

BB. "State Bar" means the State Bar of Texas.

CC. "Summary Disposition Panel" means a panel of the Committee that determines whether a Complaint should proceed or should be dismissed based upon the absence of evidence to support a finding of Just Cause after a reasonable investigation by the Chief Disciplinary Counsel of the allegations in the Grievance.

DD. "Wrongfully Imprisoned Person" has the meaning assigned by Section 501.101, Government Code.

**Credits**
Adopted by orders of Feb. 26, 1991, and Oct. 9, 1991, eff. May 1, 1992. Amended by orders of Dec. 29, 2003, eff. Jan. 1, 2004; May 14, 2008, Aug. 20, 2008, eff. Sept. 1, 2008; Oct. 14, 2013, eff. Nov. 1, 2013.

<An order of the Supreme Court dated Feb. 26, 1991, as amended by an order of the Supreme Court dated Oct. 9, 1991, adopted the Texas Rules of Disciplinary Procedure, eff. May 1, 1992.>

Notes of Decisions (26)

V. T. C. A., Govt. Code T. 2, Subt. G App. A-1, Disc. Proc., 1.06, TX ST RULES DISC P 1.06
Current with amendments received through 3/15/2015

---

**End of Document**
© 2015 Thomson Reuters. No claim to original U.S. Government Works.

Vernon's Texas Statutes and Codes Annotated
  Government Code (Refs & Annos)
    Title 2. Judicial Branch (Refs & Annos)
      Subtitle G. Attorneys
        Title 2, Subtitle G--Appendix
          a-1. Rules of Disciplinary Procedure (Refs & Annos)
            Part II. The District Grievance Committees

V.T.C.A., Govt. Code T. 2, Subt. G App. A-1, Disc. Proc., 2.13

2.13. Summary Disposition Setting

Currentness

Upon investigation, if the Chief Disciplinary Counsel determines that Just Cause does not exist to proceed on the Complaint, the Chief Disciplinary Counsel shall place the Complaint on a Summary Disposition Panel docket. At the Summary Disposition Panel docket, the Chief Disciplinary Counsel will present the Complaint together with any information, documents, evidence, and argument deemed necessary and appropriate by the Chief Disciplinary Counsel, without the presence of the Complainant or Respondent. The Summary Disposition Panel shall determine whether the Complaint should be dismissed or should proceed. If the Summary Disposition Panel dismisses the Complaint, both the Complainant and Respondent will be so notified. There is no appeal from a determination by the Summary Disposition Panel that the Complaint should be dismissed or should proceed. All Complaints presented to the Summary Disposition Panel and not dismissed shall be placed on the Hearing Docket. The fact that a Complaint was placed on the Summary Disposition Panel Docket and not dismissed is wholly inadmissible for any purpose in the instant or any subsequent Disciplinary Proceeding or Disciplinary Action. Files of dismissed Disciplinary Proceedings will be retained for one hundred eighty days, after which time the files may be destroyed. No permanent record will be kept of Complaints dismissed except to the extent necessary for statistical reporting purposes. In all instances where a Complaint is dismissed by a Summary Disposition Panel other than where the attorney is deceased or is not licensed to practice law in the State of Texas, the Chief Disciplinary Counsel shall refer the Inquiry to a voluntary mediation and dispute resolution procedure.

**Credits**

Adopted by orders of Feb. 26, 1991, and Oct. 9, 1991, eff. May 1, 1992. Renumbered from Rule 2.12 and amended by order of Dec. 29, 2003, eff. Jan. 1, 2004.

<An order of the Supreme Court dated Feb. 26, 1991, as amended by an order of the Supreme Court dated Oct. 9, 1991, adopted the Texas Rules of Disciplinary Procedure, eff. May 1, 1992.>

V. T. C. A., Govt. Code T. 2, Subt. G App. A-1, Disc. Proc., 2.13, TX ST RULES DISC P 2.13
Current with amendments received through 3/15/2015

    © 2015 Thomson Reuters. No claim to original U.S. Government Works.

 © 2015 Thomson Reuters. No claim to original U.S. Government Works.

Vernon's Texas Statutes and Codes Annotated
 Government Code (Refs & Annos)
  Title 2. Judicial Branch (Refs & Annos)
   Subtitle G. Attorneys
    Title 2, Subtitle G--Appendix
     a-1. Rules of Disciplinary Procedure (Refs & Annos)
      Part II. The District Grievance Committees

V.T.C.A., Govt. Code T. 2, Subt. G App. A-1, Disc. Proc., 2.16

2.16. Confidentiality

Currentness

A. All members and staff of the Office of Chief Disciplinary Counsel, Board of Disciplinary Appeals. Committees, and Commission shall maintain as confidential all Disciplinary Proceedings and associated records, except that:

1. the pendency, subject matter, status of an investigation, and final disposition, if any, may be disclosed by the Office of Chief Disciplinary Counsel or Board of Disciplinary Appeals if the Respondent has waived confidentiality, the Disciplinary Proceeding is based on conviction of a serious crime, or disclosure is ordered by a court of competent jurisdiction;

2. if the Evidentiary Panel finds that professional misconduct occurred and imposes any sanction other than a private reprimand.

a. the Evidentiary Panel's final judgment is a public record from the date the judgment is signed; and

b. once all appeals, if any, have been exhausted and the judgment is final, the Office of Chief Disciplinary Counsel shall, upon request, disclose all documents, statements, and other information relating to the Disciplinary Proceeding that came to the attention of the Evidentiary Panel during the Disciplinary Proceeding;

3. the record in any appeal to the Board of Disciplinary Appeals from an Evidentiary Panel's final judgment, other than an appeal from a judgment of private reprimand, is a public record; and

4. facts and evidence that are discoverable elsewhere are not made confidential merely because they are discussed or introduced in the course of a Disciplinary Proceeding.

B. The deliberations and voting of an Evidentiary Panel are strictly confidential and not subject to discovery. No person is competent to testify as to such deliberations and voting.

C. Rule 6.08 governs the provision of confidential information to authorized agencies investigating qualifications for admission to practice, attorney discipline enforcement agencies, law enforcement agencies, the State Bar's Client Security Fund, the State

Bar's Lawyer Assistance Program, the Supreme Court's Unauthorized Practice of Law Committee and its subcommittees, and the Commission on Judicial Conduct.

## Credits

Adopted by orders of Feb. 26, 1991, and Oct. 9, 1991, eff. May 1, 1992. Renumbered from Rule 2.15 and amended by orders of Dec. 29, 2003, eff. Jan. 1, 2004. Amended by order of Dec. 7, 2009, eff. Jan. 1, 2010.

<An order of the Supreme Court dated Feb. 26, 1991, as amended by an order of the Supreme Court dated Oct. 9, 1991, adopted the Texas Rules of Disciplinary Procedure, eff. May 1, 1992.>

Notes of Decisions (1)

V. T. C. A., Govt. Code T. 2, Subt. G App. A-1, Disc. Proc., 2.16, TX ST RULES DISC P 2.16
Current with amendments received through 3/15/2015

**End of Document**                                    © 2015 Thomson Reuters. No claim to original U.S. Government Works.

Vernon's Texas Statutes and Codes Annotated
  Government Code (Refs & Annos)
    Title 2. Judicial Branch (Refs & Annos)
      Subtitle G. Attorneys
        Title 2, Subtitle G--Appendix
          a-1. Rules of Disciplinary Procedure (Refs & Annos)
            Part XV. Miscellaneous Provisions

V.T.C.A., Govt. Code T. 2, Subt. G App. A-1, Disc. Proc., 15.09

15.09. Immunity

Currentness

No lawsuit may be instituted against any Complainant or witness predicated upon the filing of a Grievance or participation in the attorney disciplinary and disability system. All members of the Commission, the Chief Disciplinary Counsel (including Special Assistant Disciplinary Counsel appointed by the Commission and attorneys employed on a contract basis by the Chief Disciplinary Counsel), all members of Committees, all members of the Board of Disciplinary Appeals, all members of the District Disability Committees, all officers and Directors of the State Bar, and the staff members of the aforementioned entities are immune from suit for any conduct in the course of their official duties. The immunity is absolute and unqualified and extends to all actions at law or in equity.

**Credits**

Adopted by orders of Feb. 26, 1991, and Oct. 9, 1991, eff. May 1, 1992. Amended by order of June 15, 1994, as corrected by order of Sept. 12, 1994, eff. Oct. 1, 1994. Renumbered from Rule 15.11 and amended by order of Dec. 29, 2003, eff. Jan. 1, 2004.

<An order of the Supreme Court dated Feb. 26, 1991, as amended by an order of the Supreme
Court dated Oct. 9, 1991, adopted the Texas Rules of Disciplinary Procedure, eff. May 1, 1992.>

V. T. C. A., Govt. Code T. 2, Subt. G App. A-1, Disc. Proc., 15.09, TX ST RULES DISC P 15.09
Current with amendments received through 3/15/2015

**End of Document**

© 2015 Thomson Reuters. No claim to original U.S. Government Works.

Vernon's Texas Statutes and Codes Annotated
   Government Code (Refs & Annos)
     Title 2. Judicial Branch (Refs & Annos)
       Subtitle G. Attorneys
         Title 2, Subtitle G--Appendix
           A. State Bar Rules
             Article X. Discipline and Suspension of Members
               Section 9. Texas Disciplinary Rules of Professional Conduct (Refs & Annos)
                 Preamble: A Lawyer's Responsibilities

V.T.C.A., Govt. Code T. 2, Subt. G App. A, Art. 10, § 9, Preamble

Preamble: A Lawyer's Responsibilities

Currentness

1. A lawyer is a representative of clients, an officer of the legal system and a public citizen having special responsibility for the quality of justice. Lawyers, as guardians of the law, play a vital role in the preservation of society. The fulfillment of this role requires an understanding by lawyers of their relationship with and function in our legal system. A consequent obligation of lawyers is to maintain the highest standards of ethical conduct.

2. As a representative of clients, a lawyer performs various functions. As advisor, a lawyer provides a client with an informed understanding of the client's legal rights and obligations and explains their practical implications. As advocate, a lawyer zealously asserts the client's position under the rules of the adversary system. As negotiator, a lawyer seeks a result advantageous to the client but consistent with requirements of honest dealing with others. As intermediary between clients, a lawyer seeks to reconcile their divergent interests as an advisor and, to a limited extent, as a spokesperson for each client. A lawyer acts as evaluator by examining a client's affairs and reporting about them to the client or to others.

3. In all professional functions, a lawyer should zealously pursue clients' interests within the bounds of the law. In doing so, a lawyer should be competent, prompt and diligent. A lawyer should maintain communication with a client concerning the representation. A lawyer should keep in confidence information relating to representation of a client except so far as disclosure is required or permitted by the Texas Disciplinary Rules of Professional Conduct or other law.

4. A lawyer's conduct should conform to the requirements of the law, both in professional service to clients and in the lawyer's business and personal affairs. A lawyer should use the law's procedures only for legitimate purposes and not to harass or intimidate others. A lawyer should demonstrate respect for the legal system and for those who serve it, including judges, other lawyers and public officials. While it is a lawyer's duty, when necessary, to challenge the rectitude of official action, it is also a lawyer's duty to uphold legal process.

5. As a public citizen, a lawyer should seek improvement of the law, the administration of justice and the quality of service rendered by the legal profession. As a member of a learned profession, a lawyer should cultivate knowledge of the law beyond its use for clients, employ that knowledge in reform of the law and work to strengthen legal education. A lawyer should be mindful of deficiencies in the administration of justice and of the fact that the poor, and sometimes persons who are not poor, cannot afford adequate legal assistance, and should therefore devote professional time and civic influence in their behalf. A lawyer should aid the legal profession in pursuing these objectives and should help the bar regulate itself in the public interest.

6. A lawyer should render public interest legal service. The basic responsibility for providing legal services for those unable to pay ultimately rests upon the individual lawyer, and personal involvement in the problems of the disadvantaged can be one

of the most rewarding experiences in the life of a lawyer. Every lawyer, regardless of professional prominence or professional workload, should find time to participate in or otherwise support the provision of legal services to the disadvantaged. The provision of free legal services to those unable to pay reasonable fees is a moral obligation of each lawyer as well as the profession generally. A lawyer may discharge this basic responsibility by providing public interest legal services without fee, or at a substantially reduced fee, in one or more of the following areas: poverty law, civil rights law, public rights law, charitable organization representation, the administration of justice, and by financial support for organizations that provide legal services to persons of limited means.

7. In the nature of law practice, conflicting responsibilities are encountered. Virtually all difficult ethical problems arise from apparent conflict between a lawyer's responsibilities to clients, to the legal system and to the lawyer's own interests. The Texas Disciplinary Rules of Professional Conduct prescribe terms for resolving such tensions. They do so by stating minimum standards of conduct below which no lawyer can fall without being subject to disciplinary action. Within the framework of these Rules many difficult issues of professional discretion can arise. The Rules and their Comments constitute a body of principles upon which the lawyer can rely for guidance in resolving such issues through the exercise of sensitive professional and moral judgment. In applying these rules, lawyers may find interpretive guidance in the principles developed in the Comments.

8. The legal profession has a responsibility to assure that its regulation is undertaken in the public interest rather than in furtherance of parochial or self-interested concerns of the bar, and to insist that every lawyer both comply with its minimum disciplinary standards and aid in securing their observance by other lawyers. Neglect of these responsibilities compromises the independence of the profession and the public interest which it serves.

9. Each lawyer's own conscience is the touchstone against which to test the extent to which his actions may rise above the disciplinary standards prescribed by these rules. The desire for the respect and confidence of the members of the profession and of the society which it serves provides the lawyer the incentive to attain the highest possible degree of ethical conduct. The possible loss of that respect and confidence is the ultimate sanction. So long as its practitioners are guided by these principles, the law will continue to be a noble profession. This is its greatness and its strength, which permit of no compromise.

**Credits**

Adopted by order of Oct. 17, 1989, eff. Jan. 1, 1990.

<The original Rules Governing the State Bar of Texas, consisting of former
articles 1 to 13, were approved by the Supreme Court February 22, 1940.>

<Articles 1 through 9 of the State Bar Rules were adopted and former articles 1 through 11 of the Rules
Governing the State Bar of Texas were repealed by Order of the Texas Supreme Court dated March 14, 1983.>

<Article 10 of the State Bar Rules was adopted and article 12, §§ 1 to 7 and 9 to 36, as well as
article 13, of the Rules Governing the State Bar were repealed by Order of the Texas Supreme
Court dated February 29, 1984, effective March 1, 1984. That same order also restated and
continued article 12, § 8, of the Rules Governing the State Bar (the Texas Code of Professional
Responsibility) and promulgated such art. 12, § 8 as article 10, § 9, of the State Bar Rules.>

<Article 11 of the State Bar Rules was adopted by order of the Texas Supreme Court dated May 9, 1984.>

<Article 12 of the State Bar Rules, effective June 1, 1986, was adopted
by order of the Texas Supreme Court dated December 19, 1985.>

<Article 13 of the State Bar Rules, effective May 15, 1988, was
adopted by order of the Texas Supreme Court dated March 14, 1988.>

V. T. C. A., Govt. Code T. 2, Subt. G App. A, Art. 10, § 9 Preamble, TX ST RPC Preamble
Current with amendments received through 3/15/2015

**End of Document**    © 2015 Thomson Reuters. No claim to original U.S. Government Works.

Vernon's Texas Statutes and Codes Annotated
  Government Code (Refs & Annos)
    Title 2. Judicial Branch (Refs & Annos)
      Subtitle G. Attorneys
        Chapter 81. State Bar (Refs & Annos)
          Subchapter E. Discipline (Refs & Annos)

V.T.C.A., Government Code § 81.072

§ 81.072. General Disciplinary and Disability Procedures

Effective: September 1, 2013
Currentness

(a) In furtherance of the supreme court's powers to supervise the conduct of attorneys, the court shall establish disciplinary and disability procedures in addition to the procedures provided by this subchapter.

(b) The supreme court shall establish minimum standards and procedures for the attorney disciplinary and disability system. The standards and procedures for processing grievances against attorneys must provide for:

(1) classification of all grievances and investigation of all complaints;

(2) a full explanation to each complainant on dismissal of an inquiry or a complaint;

(3) periodic preparation of abstracts of inquiries and complaints filed that, even if true, do or do not constitute misconduct;

(4) an information file for each grievance filed;

(5) a grievance tracking system to monitor processing of grievances by category, method of resolution, and length of time required for resolution;

(6) notice by the state bar to the parties of a written grievance filed with the state bar that the state bar has the authority to resolve of the status of the grievance, at least quarterly and until final disposition, unless the notice would jeopardize an undercover investigation;

(7) an option for a trial in a district court on a complaint and an administrative system for attorney disciplinary and disability findings in lieu of trials in district court, including an appeal procedure to the Board of Disciplinary Appeals and the supreme court under the substantial evidence rule;

(8) an administrative system for reciprocal and compulsory discipline;

(9) interim suspension of an attorney posing a threat of immediate irreparable harm to a client;

(10) authorizing all parties to an attorney disciplinary hearing, including the complainant, to be present at all hearings at which testimony is taken and requiring notice of those hearings to be given to the complainant not later than the seventh day before the date of the hearing;

(11) the commission adopting rules that govern the use of private reprimands by grievance committees and that prohibit a committee:

(A) giving an attorney more than one private reprimand within a five-year period for a violation of the same disciplinary rule; or

(B) giving a private reprimand for a violation:

(i) that involves a failure to return an unearned fee, a theft, or a misapplication of fiduciary property; or

(ii) of a disciplinary rule that requires a prosecutor to disclose to the defense all evidence or information known to the prosecutor that tends to negate the guilt of the accused or mitigates the offense, including Rule 3.09(d), Texas Disciplinary Rules of Professional Conduct; and

(12) distribution of a voluntary survey to all complainants urging views on grievance system experiences.

(b-1) In establishing minimum standards and procedures for the attorney disciplinary and disability system under Subsection (b), the supreme court must ensure that the statute of limitations applicable to a grievance filed against a prosecutor that alleges a violation of the disclosure rule does not begin to run until the date on which a wrongfully imprisoned person is released from a penal institution.

(b-2) For purposes of Subsection (b-1):

(1) "Disclosure rule" means the disciplinary rule that requires a prosecutor to disclose to the defense all evidence or information known to the prosecutor that tends to negate the guilt of the accused or mitigates the offense, including Rule 3.09(d), Texas Disciplinary Rules of Professional Conduct.

(2) "Penal institution" has the meaning assigned by Article 62.001, Code of Criminal Procedure.

(3) "Wrongfully imprisoned person" has the meaning assigned by Section 501.101.

(c) In addition to the minimum standards and procedures provided by this chapter, the supreme court, under Section 81.024 shall prepare, propose, and adopt rules it considers necessary for disciplining, suspending, disbarring, and accepting resignations of attorneys.

(d) Each attorney is subject to the Texas Rules of Disciplinary Procedure and the Texas Disciplinary Rules of Professional Conduct.

(e) The state bar shall establish a voluntary mediation and dispute resolution procedure to:

(1) attempt to resolve each allegation of attorney misconduct that is:

(A) classified as an inquiry under Section 81.073(a)(2)(A) because it does not constitute an offense cognizable under the Texas Disciplinary Rules of Professional Conduct; or

(B) classified as a complaint and subsequently dismissed; and

(2) facilitate coordination with other programs administered by the state bar to address and attempt to resolve inquiries and complaints referred to the voluntary mediation and dispute resolution procedure.

(e-1) All types of information, proceedings, hearing transcripts, and statements presented during the voluntary mediation and dispute resolution procedure established under Subsection (e) are confidential to the same extent the information, proceedings, transcripts, or statements would be confidential if presented to a panel of a district grievance committee.

(f) Responses to the survey provided for in Subsection (b)(12) may not identify either the complainant or attorney and shall be open to the public. The topics must include:

(1) treatment by the grievance system staff and volunteers;

(2) the fairness of grievance procedures;

(3) the length of time for grievance processing;

(4) disposition of the grievance; and

(5) suggestions for improvement of the grievance system.

(g) A person may not maintain an action against a complainant or witness in a disciplinary proceeding based on a communication made by the complainant or witness to the commission, a grievance committee, or the chief disciplinary counsel. The immunity granted by this subsection is absolute and unqualified.

(h) The state bar or a court may not require an attorney against whom a disciplinary action has been brought to disclose information protected by the attorney-client privilege if the client did not initiate the grievance that is the subject of the action.

(i) A panel of a district grievance committee of the state bar that votes on a grievance matter shall disclose to the complainant and the respondent in the matter the number of members of the panel:

   (1) voting for a finding of just cause;

   (2) voting against a finding of just cause; and

   (3) abstaining from voting on the matter.

(j) A quorum of a panel of a district grievance committee of the state bar must include one public member for each two attorney members.

(k) A member of a panel of a district grievance committee of the state bar may vote on a grievance matter to which the panel was assigned only if the member is present at the hearing at which the vote takes place.

(l) A person may be appointed to serve on a panel of a district grievance committee of the state bar only if the person is a member of the district grievance committee from which the panel was assigned and the person was appointed to serve on the committee in strict accordance with the Texas Rules of Disciplinary Procedure.

(m) A panel of a district grievance committee of the state bar may not be changed in size for the purpose of obtaining a quorum on the panel without the approval of the complainant and the respondent in the grievance matter to which the panel was assigned.

(n) A member of a panel of a district grievance committee of the state bar may not be substituted with another member of the district grievance committee on the day of the hearing for which the panel was assigned without the approval of the complainant and the respondent in the grievance matter.

(o) Whenever a grievance is either dismissed as an inquiry or dismissed as a complaint in accordance with the Texas Rules of Disciplinary Procedure and that dismissal has become final, the respondent attorney may thereafter deny that a grievance was pursued and may file a motion with the tribunal seeking expunction of all records on the matter, other than statistical or identifying information maintained by the chief disciplinary counsel pertaining to the grievance.

**Credits**

Added by Acts 1987, 70th Leg., ch. 148, § 3.01, eff. Sept. 1, 1987. Amended by Acts 1991, 72nd Leg., ch. 795, § 20, eff. Sept. 1, 1991; Acts 2001, 77th Leg., ch. 1436, § 1, eff. Sept. 1, 2001; Acts 2003, 78th Leg., ch. 227, §§ 15, 16, eff. Sept. 1, 2003; Acts 2013, 83rd Leg., ch. 450 (S.B. 825), § 1, eff. Sept. 1, 2013.

Notes of Decisions (20)

V. T. C. A., Government Code § 81.072, TX GOVT § 81.072
Current through the end of the 2013 Third Called Session of the 83rd Legislature

**End of Document**

© 2015 Thomson Reuters. No claim to original U.S. Government Works.